## KENLEY B. WYLEY v. JOHN F. BULL.

1. PARENT AND CHILD — *In Loco Parentis* — *Assumpsit.* Where the plaintiff, a minor, and not a relative of the defendant, resided with the defendant as a son and one of the defendant's family from the time when the plaintiff was twelve years of age up to the time when he was nineteen years of age, and the plaintiff while so living with the defendant performed services for the defendant, and the defendant furnished food, clothing, lodging, schooling, expense-money, etc., to the plaintiff, and it was not understood that the plaintiff should receive any special compensation for his services, nor that the defendant should receive any special compensation for anything furnished by him to the plaintiff, nor that any account should be kept

by either with respect to any of these things, and no account was in fact kept of the same, *held*, that the plaintiff cannot recover additional compensation for his services.

2. VERDICT—*Reception.* No error was committed with respect to the receiving of the verdict.

*Error from Atchison District Court.*

THE opinion states the nature of the action, and the material facts. Trial at the January term, 1885, and judgment for defendant *Bull*, for costs taxed at $187.10. The plaintiff *Wyley* brings the case here.

*W. D. Webb*, for plaintiff in error.

*Hudson & Tufts*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Atchison county by Kenley B. Wyley against John F. Bull, to recover for work and labor alleged to have been performed by the plaintiff for the defendant from February 1, 1875, up to February 3, 1882. The case was tried before the court and a jury, and the court instructed the jury, in effect, that they should find for the defendant, and they did so, and judgment was rendered upon their verdict in favor of the defendant and against the plaintiff for costs; and to obtain a reversal of this judgment, the plaintiff, as plaintiff in error, brings the case to this court.

It appears from the evidence in this case substantially as follows: On February 1, 1875, the plaintiff, who then lacked just two days of being twelve years old, together with his two brothers and three sisters, all minors, resided with their uncle and guardian, George Tedrick, of Brown county, upon whom they all depended for care, sustenance, and support. Their father and mother were dead. About that time the plaintiff, under an arrangement made between his uncle and guardian, Tedrick, and the defendant, went to live with the defendant as one of his family, doing such work for the defendant as he reasonably could, and the defendant was to board him, clothe him, and send him to school, etc., as though he

were his own son. This arrangement was to continue until
the plaintiff should arrive at the age of twenty-one years.
Nothing was said at the time nor at any other time between
the defendant and the plaintiff's uncle, or between the defend-
ant and the plaintiff, with respect to the payment of wages or
the payment for the boarding, clothing, schooling, etc., to be
furnished by the defendant, and no account was ever kept, or
to be kept by any one of the parties with reference to wages,
or with reference to the boarding, clothing, schooling, etc., or
with reference to anything else. The plaintiff continued to
reside with the defendant as one of his family up to about
February 3, 1882, when he and the defendant had a quarrel
and a fight, and the plaintiff left. During the time while the
plaintiff resided with the defendant, he lived with him in the
same manner as though he had been a son of the defendant.
The defendant and his wife treated him as a son, and he called
the defendant "pa," and the defendant's wife "ma," and they
called him their boy. They had no children of their own.
The plaintiff was treated well, furnished with good food,
clothing and lodging, sent regularly to school, and all at the
defendant's expense; and the defendant occasionally gave him
holidays, permitted him to go to shows and other places of
amusement, and furnished him with spending-money. On
the other side, it is admitted that the plaintiff was a good boy,
and worked well for the defendant. In fact, the relationship
existing between the plaintiff and the defendant and his wife
was generally pleasant and satisfactory, and was almost pre-
cisely the same as though the plaintiff had in fact been their
son. After the plaintiff became twenty-one years of age, and
on September 12, 1884, he commenced this action.

We are inclined to think that the decision of the court be-
low is correct. Where a person lives with a relative as one
of the relative's family, neither has a cause of action against
the other for compensation, for wages on the one
side, or for boarding, lodging, etc., on the other
side, or for anything else furnished by the one to
the other as a member of the family, except where an express

1. Parent and
child—in loco
parentis—as-
sumpsit.

contract is shown to exist between the parties requiring that one or the other shall have compensation. (*Ayers v. Hull,* 5 Kas. 419; *Greenwell v. Greenwell,* 28 id. 675; *Ensey v. Hines,* 30 id. 704; *Shane v. Smith,* 37 id. 55; 26 Cent. L. J., 51–55, and the numerous cases there cited.) And this rule applies with equal force and to an equal extent as between strangers living together as one family, except as we shall hereafter state. (*Windland v. Deeds,* 44 Iowa, 98; *Smith v. Johnson,* 45 id. 308; *Ryan v. Lynch,* 9 Mo. App. 18; *Hartman's Appeal,* 3 Grant's Cases, 271; *Livingston v. Ackeston,* 5 Cow. 531; *Griffin v. Potter,* 14 Wend. 209; *Mountain v. Fisher,* 22 Wis. 93; *Cooper v. Cooper,* Mass., 17 N. E. Rep. 892; 26 Cent. L. J. 53, and cases there cited.)

About the only difference in the rule of law as between relatives and the rule of law as between strangers living together as one family is, that as to relatives no contract for compensation to be made on either side will be implied, but any contract claimed to exist must be specifically and affirmatively shown, while as between strangers a contract for compensation will be implied unless the contrary is shown either expressly or impliedly, from the affirmative circumstances expressly shown to exist in the case. In all cases, however, when the exact relation between the parties is clearly shown, when it is shown that the parties though strangers to each other have nevertheless lived together as one family, as parent and child, for instance, and that no express contract was made for compensation to either party, none on the one side for wages, and none on the other side for board, lodging, clothing, schooling, spending-money, etc., then the same rule will apply as though the parties were near relatives. Of course the contract made in the present case between the plaintiff's uncle and the defendant, that the plaintiff should reside with the defendant as one of his family for nine years, was void under the statute of frauds. None of the parties was bound by it; and each had a right to treat it as a nullity; but the plaintiff did live with the defendant seven years as a part of his family, and the aforesaid void contract was some evidence as tending

to show the exact *status* or relation that existed between the plaintiff and the defendant while the plaintiff so lived with the defendant, and as the contract was not binding upon anybody, and as no binding contract was ever made between the defendant and the plaintiff, or between the defendant and the plaintiff's uncle and guardian, the relation existing between the plaintiff and the defendant was one which they permitted to exist merely by sufferance, and each had a right to annul it at any time. It was therefore wholly immaterial as to which, the plaintiff or the defendant, was at fault at the time when the plaintiff and the defendant severed their relations with each other, and when the plaintiff ceased to further reside with the defendant. While they lived together they did so as parent and son, being mutually beneficial to each other, and neither expected any additional compensation, and neither can now recover any such additional compensation. Under the evidence the severing of their relations two years prior to the time when by the original void contract they were to be severed, caused a loss to the defendant and not to the plaintiff.

After the jury had returned their verdict to the court they were polled, and each juror, with one exception, answered that the verdict returned was his verdict, and that juror, a Mr. Chaplin, at first answered that he "consented to it under protest," and again he answered "I did consent under protest." The court then said to the juror, "Mr. Chaplin, is this your verdict?" and the juror answered "It is; but I consented to it under protest." The court then discharged the jury. Immediately after the discharge of the jury and not before, the counsel for the plaintiff objected to the receiving of the verdict, but the court overruled the objection. Under the circumstances of this case we think no error was committed in this respect. Nor do we think that the court below committed any substantial error in any other respect.

2. Verdict—reception.

The judgment of the court below will be affirmed.

All the Justices concurring.