No. 27,171.

Doris Burnett Sherman, *Appellant*, v. Lillian C. Davidson
et al., *Appellees*.

SYLLABUS BY THE COURT.

Parent and Child—*Persons in Loco Parentis—Claim for Support—Necessity
of Express Contract*. Plaintiff was the adopted child of Burnett and wife.
They had a daughter married to Davidson. After death of her parents by
adoption, plaintiff was received into the Davidson home, where she was
reared as a member of the family. Mrs. Davidson was appointed guardian
of plaintiff's person and estate, and Davidson was surety on the guardian's
bond. Plaintiff attained majority by marriage, and sued for money in the
guardian's hands. The district court offset claims of Davidson for "gen-
eral keep and schooling," for clothing, and for other items furnished plain-
tiff during minority, without contract for reimbursement. *Held*, the dis-
trict court erred.

Appeal from Cloud district court; John C. Hogin, judge. Opinion filed
March 12, 1927. Reversed.

*M. V. B. Van De Mark*, of Concordia, for the appellant.

*Charles L. Hunt, Frank C. Baldwin* and *C. J. Putt*, all of Concordia, for
the appellees.

The opinion of the court was delivered by

Burch, J.: The action was one commenced by a ward after she
attained majority to recover the funds belonging to her in the hands
of her guardian. Deductions were made in favor of the guardian's
husband and surety, for maintenance of plaintiff during minority.
Plaintiff appeals.

When plaintiff was about four days old she was adopted by
Louis C. Burnett and his wife, Olive L. Burnett. Olive L. Burnett
died in June, 1920, and Louis C. Burnett died in March, 1922.
The Burnetts had a daughter, Lillian C., who was married to
L. F. Davidson. The Davidson family consisted of Davidson, Mrs.
Davidson, a son, and two daughters. On the death of her father
by adoption, plaintiff was received and subsequently lived in the
Davidson home as a member of the family. She was reared, edu-
cated, and treated by the Davidsons in the same manner as their
own daughter of the same age, and she did the same work in the

Guardian and Ward, 28 C. J. p. 1117 n. 44. Parent and Child, 29 Cyc. p. 1671
n. 50; 20 R. C. L. 593.

household as the Davidson daughters. In February, 1924, plaintiff and one of the daughters were sent to school in Denver, Colo. In September, 1924, plaintiff went to California. In February, 1925, she married, and thereby attained her majority. After plaintiff entered the Davidson home, Mrs. Davidson was appointed guardian of her person and estate, and Davidson became surety on the guardian's bond. At the time judgment was rendered, the guardian had in her hands funds belonging to plaintiff in the sum of $1,117.74.

After plaintiff married, Davidson sent her a bill "for general keep and schooling," amounting to $540. When plaintiff commenced suit against the guardian and against Davidson as surety, Davidson made an additional charge for plaintiff's school clothing and for other items. Davidson's total charges consumed all of plaintiff's money except $312.94, the sum for which judgment was rendered.

Mrs. Davidson testified on behalf of herself and her husband that she did not keep track of the money she spent for plaintiff, she spent whatever was necessary to sustain plaintiff in her position as a daughter of the family; she purchased plaintiff's clothing and Mr. Davidson paid for it. Mrs. Davidson testified further as follows: "We intended she should pay us a reasonable amount for her care." On August 10, 1925, Mrs. Davidson, Davidson, and others, were in the office of the probate judge in the courthouse in Concordia. Plaintiff produced the probate judge as a witness, and had the probate judge been permitted to do so, she would have testified as follows:

"Lillian C. Davidson, in the presence of L. F. Davidson, M. V. B. Van De Mark and myself, stated in substance, 'We did not intend to charge Doris anything for her keep, or to make any bill against her, until after we learned that she was married.'"

The district court refused to hear the testimony. Davidson testified "it was the family understanding that she was to pay her way when she came into our home." There was no other evidence on behalf of defendants bearing on the subject of a contract with Davidson to reimburse him for his expenditures. The court did not find there was a contract, neither parties to nor terms of an enforceable contract could be stated from the evidence, and without a contract plaintiff's estate was not subject to appropriation.

In the opinion in the case of *Ayres v. Hull,* 5 Kan. 419, it was said that when a person dwells with a family as a member of it, without promise, contract or understanding that the person shall

Sherman v. Davidson.

be paid for services performed, the law will not imply a contract to that effect. In the opinion in the case of *Greenwell v. Greenwell*, 28 Kan. 675, it was said that when a widow lives with the family of her son, without agreement, promise, contract or understanding that she shall pay for her board and washing, the law will not imply a contract on her part to pay the son for her board and washing. The word "understanding," as used in these opinions, referred to formality, and not to reality, of manifestation of assent to creation of the relation of debtor and creditor. The family status forbids liability by implication, and there can be no liability except there be an express contract. The subject was clarified by the opinion in the case of *Wyley v. Bull*, 41 Kan. 206, 20 Pac. 855:

"Where a person lives with a relative as one of the relative's family, neither has a cause of action against the other for compensation, for wages on the one side, or for boarding, lodging, etc., on the other side, or for anything else furnished by the one to the other as a member of the family, except where an express contract is shown to exist between the parties requiring that one or the other shall have compensation. [Citing authorities.] And this rule applies with equal force and to an equal extent as between strangers living together as one family, except as we shall hereafter state. [Citing authorities.]

"About the only difference in the rule of law as between relatives and the rule of law as between strangers living together as one family is, that as to relatives no contract for compensation to be made on either side will be implied, but any contract claimed to exist must be specifically and affirmatively shown, while as between strangers a contract for compensation will be implied unless the contrary is shown either expressly or impliedly, from the affirmative circumstances expressly shown to exist in the case. In all cases, however, when the exact relation between the parties is clearly shown, when it is shown that the parties though strangers to each other have nevertheless lived together as one family, as parent and child, for instance, and that no express contract was made for compensation to either party, none on the one side for wages, and none on the other side for board, lodging, clothing, schooling, spending money, etc., then the same rule will apply as though the parties were near relatives." (p. 208.)

When plaintiff became a member of the Davidson family she was a minor and had no guardian. When the person who is to be bound, or whose estate is to be bound, is under disability, the contract must be with the person's guardian. (*Hoth, Adm'r, v. Sholz*, 116 Kan. 463, 227 Pac. 526.)

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for plaintiff for the entire sum due from her guardian.