No. 34,585

JENNIE MOSS and EMMA COX, *Appellees*, v. DAN BRANSON,
Administrator, *Appellant*.

(99 P. 2d 744)

Opinion filed March 9, 1940.

*George Barrett* and *Robert G. Miller*, both of Pratt, for the appellant.
*William B. Hess* and *Myron S. Steere*, both of Pratt, for the appellees.

The opinion of the court was delivered by

SMITH, J.: These were claims against an estate for personal services rendered the deceased. The claims were allowed in part by the probate and district courts of Pratt county. The administrator appeals.

The facts are as follows: The claimants were both daughters of the deceased. They were both widows. Deceased and his wife, who had died before him, were the parents of twelve children. For some years before the death of deceased he had made his home with his son Ralph, who was a bachelor. They both lived on what was known as the home place. Ralph died in 1936. The claim of Jennie Moss was for personal services rendered her father at his request from February 1, 1934, to October 10, 1934, in the amount of $255, and from December 15, 1935, to the date of his death, July 28, 1938. She claimed the fair and reasonable value of her services was $2,165. The claim of Emma Cox was for personal services rendered deceased at his request from March 15, 1929, to September 19, 1933; from July 21, 1934, to November, 1935, and from July 21, 1937, to July

28, 1938. She claimed that deceased agreed to pay her for these services and that a fair and reasonable compensation was $1,806.

The two claims were consolidated and heard together in the probate court. Each one of the claimants was allowed $540. The administrator appealed from the order making this allowance and the district court consolidated the two claims and allowed each of the claimants $180. At the close of the evidence of claimants the administrator demurred to it. This demurrer was overruled. The administrator stood upon his demurrer and did not introduce any evidence. Motion for a new trial was filed by the administrator and overruled.

The administrator argues here that the claimants' evidence was insufficient to establish an express contract that their father was to pay them for their services, and that in the event there was sufficient evidence as against a demurrer to establish the express contract, then there was not sufficient evidence to establish the value of the claimants' services.

Jennie Moss testified that she had six brothers and five sisters; that her father was ninety-four years old when he died; that on February 1, 1934, she came to her father's home and stayed with him until October 13, 1934; that at that time her brother Ralph was there with her father; that Ralph died on April 23, 1936; that in 1934 when she went there she found her father was very nearly blind; that his health was poor and he did not require any attention at night; that from February, 1934, to October, 1934, she raised chickens and made garden, and did the housework and helped with the milking; that she left in October, 1934, and her sister, Mrs. Cox, came when she left; that she returned to her father's home the 15th or 16th of December, 1935, after she had the "flu" at her son-in-law's house in 1936; that from that time until her father died she was there helping with the work and caring for him. She did work for her father and the washing and other housework until about July 22 or 23 of 1937; that at that time Mrs. Cox came; that while she was there for the second time her father could see to get around, but his general health got worse; that they had to watch him at all times at night and it took some one's constant care to look after him; that the last six months they never left him fifteen minutes alone. On cross-examination she testified that she was a widow and that after she separated from her husband in 1924 she stayed with one of her sons-in-law; that her father sent a team and wagon and

brought her to his house and she stayed there until 1934; that her brother Ralph had always made his home at the home place and was the provider; that from the time she separated from her husband she made her home partly with her father.

Claimant Emma Cox testified that her husband died in 1923 and since that time she had made her home with her children; that she went to her father's home in July, 1934; that at that time he was able to be up and around the house, but he was actually failing; that he had to be cared for all the time because of his blindness; that on September 19, 1933, she left home and in 1934 went back; that she was on her way to Colorado from Oklahoma and came that way in July, 1934, and stayed with her father until the middle of December, 1935; that she never returned until 1937, and then she stayed until his death; that she had to look after her father and see that he did not fall; that from the 10th of January, 1938, he had to have constant attention and care day and night.

A son-in-law of Mrs. Moss testified that he had a conversation with deceased about two months before he died; that at that time deceased said that he wanted Mrs. Moss to be paid for her services there in taking care of him.

Another daughter of deceased testified that she visited her father a good many times in 1934; that his health was declining; that he was losing his eyesight; that he should not have been left alone at all; that on February 9, 1938, she went there and stayed until the 3d day of March, 1938; that from February 9 to March 3, 1938, when she was there, the father was in bed sick and had to be cared for like a baby; that Mrs. Moss and Mrs. Cox took care of him; that in July, 1936, her father told her, "I want Jennie amply paid for her time and service here, she is so kind and considerate of me"; that in the fall of 1937 he said he wanted the girls amply paid for their time and services there; that he wanted it paid out of what he left after he passed on; that Mrs. Cox did not make her home with her father, but would visit there when not with her children.

H. R. Walter testified that the last three or four months of his life deceased was blind and could not get around; that in March before he died he told the witness he wanted the girls to be amply paid for what they were doing for him.

As has been noted, the administrator interposed a demurrer to this evidence and when the demurrer was overruled stood upon it

and did not introduce any evidence. The district court allowed each of the claimants $180. Hence this appeal.

It may be stated at the outset that there is no evidence in this record that either one of the claimants had a contract with their father. There is evidence that the old gentleman stated he wanted them paid for their services, but this falls short of a contract. In the absence of a contract, the law presumes that services rendered by a daughter to her father were performed gratuitously. In *Wyley v. Bull*, 41 Kan. 206, 20 Pac. 855, in dealing with this proposition, this court said:

"Where a person lives with a relative as one of the relative's family, neither has a cause of action against the other for compensation, for wages on the one side, or for boarding, lodging, etc., on the other side, or for anything else furnished by the one to the other as a member of the family, except where an express contract is shown to exist between the parties requiring that one or the other shall have compensation." (p. 208.)

See *Sherman v. Davidson*, 123 Kan. 69, 254 Pac. 351, also *Nelson v. Peterson*, 147 Kan. 507.

Claimants argue that the relationship which they have to the household of their father was not such as to make this rule applicable. We have examined the record on this point and find that taken in its most favorable light for claimants and drawing every inference favorable to them this was a case where the reciprocal relationship existed, that is, claimants received a home, and all that goes with it, and they in turn took care of their father and did the other work commonly performed by a woman on a farm, including the care the father needed.

The judgment of the trial court is reversed with directions to render judgment for the administrator.