No. 41,109

In the Matter of the Estate of Harry L. Rogers, Deceased. (J. RODNEY STONE, Administrator, and ALICE E. ROGERS, Surviving Spouse, *Appellants* v. MARCELLA ROGERS, *Appellee*.)

(334 P. 2d 830)

Opinion filed January 24, 1959.

*George A. Robb* and *J. Rodney Stone,* both of Newton, argued the cause and were on the briefs for appellants.

*Lelus B. Brown,* of Newton, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: This was a proceeding for the allowance of a demand against a decedent's estate. The claimant, Marcella Mae Rogers, sought recovery against the estate of her deceased father, Harry L. Rogers, upon an express contract. J. Rodney Stone, administrator of the estate, and Alice E. Rogers, the surviving spouse, appeal from a judgment in claimant's favor following trial by a jury in the district court.

Harry L. Rogers and his first wife were the parents of six children including claimant and a minor son, Ronald Lee Rogers. They were divorced in 1952. Later, decedent married appellant, Alice E. Rogers. That marriage resulted in several separations depriving

Ronald of a home. Claimant furnished him a home with all the necessities of life and paid for his education. During the periods of decedent's separation from Alice, and particularly the period from May 1, 1956, until approximately two days before his death, which occurred December 10, 1956, he was ill, disabled, and without income, and claimant furnished him a home.

On March 20, 1957, claimant filed her petition for the allowance of her demand in the probate court alleging the decedent promised to reimburse her for money she expended for the care and education of Ronald, and in addition, sought recovery for the reasonable value of services and care rendered the decedent from May 1, 1956, until the approximate date of his death, and for drugs, x-ray, and medical care furnished him between those dates. The administrator and the surviving spouse filed defenses to the claim denying each and every allegation of claimant's petition, except the formalities, and as a further defense, alleged that if the claimant had paid out the sums of money alleged in the petition, such payments were not a debt of the decedent due the claimant and should not be allowed as a demand against the estate. Upon allowance of the claim by the probate court, the administrator and surviving spouse appealed to the district court where the appeals were consolidated.

At the close of claimant's case in chief, appellants demurred to her evidence upon the ground that the testimony did not establish an express contract in her favor. The demurrers were overruled, and appellants introduced evidence in their defense. Claimant introduced rebuttal evidence and the case was submitted to a jury which returned a verdict in favor of the claimant for $3,415.50, and answered special questions as follows:

"1. Was an express oral contract made between Harry Rogers and Marcella Mae Rogers?

Answer: 'Yes.'

"2. If you answer Question No. 1 as 'yes' then state:
  (a) When the contract was made.
      September, 1956.
  (b) Where the contract was made.
      Marcella Mae Rogers' home.
  (c) Who were the persons present at the time the contract was made?
      Harry, Marcella and Ronald Rogers.
  (d) What did Marcella Mae Rogers promise to do under this contract? (Past, present, and future.)
      Marcella Rogers promised and did take care of Ronald's education and keep from July, 1955, to December, 1956. Marcella Rogers promised to finance medical expenses and care of her father, Harry Rogers.

(e) What did Harry Rogers promise to do under this contract?
   Harry Rogers promised to reimburse Marcella Rogers for all expenses incurred during his and Ronald's stay at her home, including Ronald's education."

Motions for judgment notwithstanding the verdict and to set aside answers to special questions, and for a new trial, were denied, and judgment was entered in harmony with the findings of the jury and the verdict. Hence, this appeal.

Appellants assign as error the following rulings of the district court: (1) the overruling of their demurrer to claimant's evidence; (2) the overruling of their motion for judgment notwithstanding the verdict and to set aside answers to special questions; (3) the rendering of judgment upon the verdict; and (4) the overruling of their motion for a new trial.

With respect to appellants' first specification of error, the record discloses they failed to renew their demurrer at the close of all of the evidence or to move for a directed verdict. Where, as here, the defendant does not stand upon his demurrer, but introduces evidence in his own behalf, the question of whether the evidence is sufficient to warrant the submission of plaintiff's case to the jury is to be determined on the basis of all the evidence and not on plaintiff's evidence alone. Where a defendant introduces his evidence after his demurrer to plaintiff's evidence has been overruled, and does not at the close of all the evidence renew his demurrer or move for a directed verdict, he waives the right to contend the evidence is insufficient to warrant the submission of plaintiff's case to the jury (*Ogilvie v. Mangels*, 183 Kan. 733, 332 P. 2d 581; *Ziegelasch v. Durr*, 183 Kan. 233, 326 P. 2d 295; 89 C. J. S., Trial § 666, p. 511). Since appellants failed to raise the sufficiency of the evidence by a motion for a directed verdict, any such objection has been waived.

Appellants next specify as error the overruling of their motion for judgment notwithstanding the verdict, claiming that the evidence was insufficient to sustain the verdict. The point is not well taken. A motion for judgment notwithstanding the verdict under the common law and as defined by G. S. 1949, 60-3119, reaches only the pleadings and verdict. Such a motion does not raise questions as to the sufficiency of the evidence (*Ogilvie v. Mangels*, supra).

Concerning appellants' third specification of error, this court has repeatedly held that an assignment of error to the effect that

the district court erred in rendering judgment amounts to nothing more than that the decision is wrong; it does not specify any error and presents nothing for appellate review (*McIntyre v. Dickinson,* 180 Kan. 710, 307 P. 2d 1068; *Hill v. Lake,* 182 Kan. 127, 318 P. 2d 1050; *Curtis v. Kansas Bostwick Irrigation District,* 182 Kan. 301, 320 P. 2d 783).

Appellants' fourth and principal specification of error is that there was insufficient evidence to establish an express contract that claimant was to be repaid by decedent for the care and services rendered to him and Ronald. In short, appellants do not contend Marcella did not render the services nor expend the sums of money she now claims; they deny such an agreement was ever entered into between the decedent and claimant.

The parties agree that principles of law involved are well settled. The general rule is where relatives live together as a family, rendering services for each other, neither can recover compensation from the other for those services, unless there is an express contract that compensation should be paid for the services rendered. (*Hoth, Adm'r, v. Scholz,* 116 Kan. 463, 227 Pac. 526; *In re Erickson,* 123 Kan. 491, 255 Pac. 1108, and authorities cited; *Sherman v. Davidson,* 123 Kan. 69, 254 Pac. 351; *Nelson v. Peterson,* 147 Kan. 507, 78 P. 2d 20; *Moss v. Branson,* 151 Kan. 386, 99 P. 2d 744.) The rule is based upon a presumption that services rendered a member of the family are filial and gratuitous and are not to be compensated in money. (*Wyley v. Bull,* 41 Kan. 206, 20 Pac. 855; *Griffith v. Robertson,* 73 Kan. 666, 85 Pac. 748; *Nelson v. Peterson,* supra; *Hodge v. Bishop,* 150 Kan. 202, 92 P. 2d 37; *Moss v. Branson,* supra.) That rule has recently been somewhat relaxed. *In re Estate of Nicholson,* 167 Kan. 14, 204 P. 2d 602, it was held:

"In order for one member of a family to recover against the estate of another member for services rendered the decedent in his lifetime, the claimant must show either that an express contract for remuneration existed *or that the circumstances under which the services were rendered were such as to exhibit a reasonable and proper expectation that there would be compensation.*" (Syl. ¶ 1.) (Emphasis supplied.)

See, also, *Nelson v. Peterson,* supra, p. 510.

The presumption that services rendered a member of the family are filial and gratuitous, like any other presumption of fact, may be overcome and a contract, if any existed, may be established by any competent evidence; it is not essential that there be a formal offer and acceptance, and in the absence of more direct evidence,

the fact may be established by circumstances. (*Logston v. Needham,* 138 Kan. 439, 26 P. 2d 443; *Johnson v. Lander,* 140 Kan. 329, 36 P. 2d 1006; *Griffith v. Robertson,* supra; *In re Estate of Nicholson,* supra.) Thus, in order for claimant to recover she was required to clearly, succinctly and satisfactorily prove by direct or circumstantial evidence an express contract that she would be paid for the services in question, or that the circumstances under which they were rendered were such as to exhibit a reasonable and proper expectation they would be compensated in money. (*Nelson v. Peterson,* supra; *In re Estate of Nicholson,* supra.) No claim is made that the district court erred in the admission or exclusion of evidence, or in its instructions to the jury. Under such circumstances, we do not doubt that the jury was properly instructed with respect to the quantum of proof necessary to establish this type of claim against an estate. The essential contractual proposition was: Were the services in question to be paid for? The jury found they were, and we think there was substantial evidence to support the verdict and answers to the special questions.

Claimant testified that in September, 1956, while getting ready to buy Ronald's schoolbooks she overheard her father tell Ronald in her home, "Well, it won't be very long until I will be able to pay Marcella for your education and care." Ronald testified that in the summer of 1956, he overheard a conversation between decedent and Marcella that decedent "wanted to pay Marcella for taking care of me and helping get his health up and taking care of him" and that he "would pay it out of his mother's estate." Decedent's mother died in January, 1956, leaving an estate which was then in the process of administration. Ronald also testified that during that same summer he overheard another conversation between claimant and decedent in which decedent said "he was going to pay her back for taking care of him and I." He further testified to another conversation in which decedent told claimant that "he wanted to go down and sign up at the notary public to pay Marcella back so that she would not have any trouble in getting the money."

Marcus Kay Rogers, decedent's son, testified that he had a conversation with his father about Ronald's education and decedent said that "he felt Marcella should be reimbursed in some way for the burden she had taken." Ruby Blansett testified that in a conversation about decedent's stay at claimant's home, he told her that "he was very concerned about Marcella having this extra

burden and he wouldn't have done it at all or let her do it unless he knew that some day he could repay her." Joy Keith Rogers, another son of decedent, testified he had a conversation with his father about Ronald's and his care and keep, and decedent said "he thought he would—he would reimburse her at some later day when he found work."

From the record before us two things are evident. First, claimant does not seek recovery for services rendered during decedent's former stay in her home when he and Alice Rogers first separated; and second, it is obvious decedent obligated himself to reimburse claimant for all expenses incurred and services rendered during Ronald's and his stay in claimant's home during the period in question. While it is true that the conversations testified to contained some isolated words of gratitude as might be natural under the circumstances, they also contained words of obligation to the effect that decedent "was going to pay her back" and "would pay it out of his mother's estate," and "he thought that he would —he would reimburse her," and that "he wouldn't have done it at all or let her do it unless he knew that someday he could repay her."

An express contract exists whenever there is a mutual meeting of the minds upon any contractual proposition. What was the mutual understanding of the parties, if any, was a proper question for a jury (*Hodge v. Bishop*, supra, p. 209), and that tribunal has answered that the parties intended the services in question should be paid for. As indicated previously, the evidence shows a contract rather directly. It is not questioned but that claimant performed her part of the bargain, and decedent said he was going to repay Marcella and that he *would* pay her out of his mother's estate. There was ample evidence to warrant the jury's verdict and the answers it made to the special questions. Those answers are consistent with each other and support the general verdict.

The order overruling appellants' motion for a new trial is free from error and the judgment of the district court is affirmed.

It is so ordered.