No. 41,177

Philip E. McCarthy, *Appellee,* v. John J. Tetyak, *Appellant.*

(334 P. 2d 379)

Opinion filed January 24, 1959.

*Robert P. Anderson,* of Overland Park, argued the cause, and *Lyndus A. Henry, David R. Gilman,* and *Gwendolyn V. Falkenberg,* all of Overland Park, were with him on the briefs for the appellant.

*A. C. Cooke,* of Kansas City, argued the cause, and *Blake A. Williamson, James K. Cubbison, Lee Vaughan,* and *Donald A. Hardy,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This was an action to recover damages for alleged misrepresentations made in connection with the sale, under a written contract, of all the corporate stock of Fairfax Aviation, Inc., by the defendant to the plaintiff. The plaintiff recovered and the defendant appeals.

The cumulating facts and circumstances responsible for this lawsuit, and the theory on which plaintiff bases his right to recover, are clearly set forth in plaintiff's petition, portions of which will be quoted and others summarized.

Paragraphs 2 to 7, inclusive, of the first cause of action of such pleading, read:

"2. That on or about the 30th day of August, 1955, plaintiff and defendant entered into a written stock purchase agreement, a copy of which is attached hereto, marked Exhibit A and made a part hereof.

"3. That under the terms of said agreement plaintiff purchased from defendant all of the common stock of Fairfax Aviation, Inc., a Kansas corporation, for which he paid to defendant the sum of $20,000.00.

"4. That under the terms of said agreement defendant was to furnish plaintiff with a balance sheet showing the assets and liabilities of said corporation and that defendant did so furnish a balance sheet and by the terms of the agreement warranted the statements therein to be true.

"5. That one of the assets listed by defendant and represented by defendant to plaintiff to be a valid asset of the said Fairfax Aviation, Inc., was a commission due said company on the sale of an airplane to Long-Bell Lumber Co., in the amount of $5,000.00.

"6. That there was at that time no such commission due to the said company as no plane had ever been sold to the said Long-Bell Lumber Co. and defendant knew or should have known that there was no such commission due; and his statement was a misrepresentation upon which plaintiff relied to his detriment.

"7. That subsequent to the purchase by plaintiff of the stock from defendant under said agreement, plaintiff ascertained that defendant had obligated the company to the Southwestern Bell Telephone Co. for advertising in the amount of $1,008.00, which fact had not been disclosed to plaintiff as required by said agreement."

Paragraph 8 of the same cause of action alleges that on March 2, 1956, one Erhart instituted a suit against Fairfax Aviation, Inc., for a commission due from such corporation for an airplane sold

in August 1955; that this commission was not listed by defendant as a liability of the company; and that plaintiff was obliged to employ legal counsel and defend the action which resulted in a judgment against Fairfax for $3,332.50, all to his damage in the sum of $4,832.50.

Paragraph 9 charges that plaintiff relied on defendant's misrepresentations in purchasing the Fairfax stock and as a result sustained damages in the total sum of $10,840.50.

Count 2 of the petition makes all of the allegations of Count 1 a part thereof and asserts that the alleged misrepresentations were made by the defendant deliberately, wilfully and with full knowledge of their falsity, by reason of which plaintiff is entitled to $10,000 in punitive damages.

The contract, included in the petition as Exhibit "A," is quite complicated and need not be detailed. In a general way it may be said, it sets forth the agreement of the parties at length and that portions of paragraphs thereof, of particular importance to the disposition of the present controversy read:

·   "5. The Seller hereby represents, warrants and promises to the Buyer as follows:

·   "(*l*) That prior to the execution hereof, Seller has delivered to Buyer *a balance sheet* of the Corporation prepared as of August 31, 1955, *and a statement of profit and loss* for the operations of the Corporation from its organization until August 31, 1955, both of said financial statements having been prepared by Peat-Marwick-Mitchell & Co., independent certified public accountants, from the books and records of the Corporation. Said financial statements are complete and correct and have been prepared in accordance with generally accepted principles of accounting and fairly present the financial position of the Corporation on the dates as of which prepared. . . .

"(*m*) There are no liabilities or claims or demands against the Corporation, whether accrued or contingent, not reflected *in said balance sheet,* except ordinary obligations or commitments incurred in the ordinary course of business subsequent to the date of preparation *of said balance sheet.* . . . *Seller agrees to indemnify and save harmless the Buyer from and against any and all loss, damage, expense, cost or liability arising from or in any way connected with any liability of or claim or demand against the Corporation,* including any liability for any unpaid tax, assessment or fee levied by any government or governmental body, *not reflected in said balance sheet,* except any ordinary obligations incurred by the Corporation in the ordinary course of its business since the date of said balance sheet, *whether or not such liabilities, claims or demands are presently known by the Seller or are now accrued or contingent.*

"(q) Seller agrees to indemnify and save harmless the Buyer from and against any and all loss, liability, damage, cost or expense resulting from or in any way connected with the breach of any of the foregoing representations and warranties of the Seller.

. . . . . . . . . . . . . . . .

"9. It is agreed that the representations and warranties of the Seller herein contained shall survive the execution of this agreement and the consummation of the sale hereunder and shall continue and be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives and assigns." (Emphasis supplied.)

Without attacking the foregoing pleading by motion, or otherwise, defendant filed an answer wherein he admits he entered into the written purchase agreement with plaintiff and that Exhibit "A" is a true and correct copy thereof; admits sale of all the common stock of Fairfax Aviation Inc. to plaintiff for the amount therein specified and receipt of that sum; and denies generally the allegations of paragraphs 5, 6, 7, 8 and 9 in Count 1 and all of the allegations in Count 2 of such pleading.

With issues joined as related the cause came on for trial by a jury. Plaintiff adduced his evidence consisting of his own testimony and certain Exhibits, including the stock purchase agreement, the balance sheet, referred to in that instrument, and a journal entry of judgment, disclosing judgment had been rendered against Fairfax in the district court of Wyandotte County in the Erhart suit for the sum of $3,332.50, as claimed in the petition. Thereupon defendant moved to dismiss Count 2 of the petition on grounds of absence of any foundation on which to base an award for punitive damages. This motion was denied, whereupon defendant proceeded to testify as a witness in his own behalf and offered no further evidence.

After all parties had rested the court instructed the jury as to the law of the case, including an instruction on punitive damages, to which instructions no objections were made by either of the parties. It then, without objection, submitted certain special interrogatories and directed that the jury retire to consider its general verdict and make answers to such interrogatories. In due time the jury complied with this direction by returning a general verdict in favor of plaintiff and against defendant for the sum of $9,322.50 actual damages and $1,000.00 punitive damages, together with the submitted interrogatories and its answers thereto which read:

"1. Did the defendant represent that one of the assets of said company

was a Five Thousand Dollar commission due on a plane sold to the Long Bell Lumber Company? Answer: Yes.

"2. If you answer the previous question in the affirmative, state whether such a commission was due. Answer: No.

"3. At said time, was there any sum owed by the defendant to the Southwestern Bell Telephone Company for advertising? Answer: Yes.

"4. Did the defendant either refuse or neglect to defend case No. 93780-A in the District Court of Wyandotte County, Kansas, thereby necessitating plaintiff to incur legal services to defend such case? Answer: Yes.

"5. If you find for the plaintiff, state what amount, if any, you allow for punitive damages. Answer: $1,000.00."

Thereupon the trial court approved the verdict and rendered judgment against the defendant in accord therewith. Subsequently defendant filed a motion for a new trial, couched in the general language of the statute (G. S. 1949, 60-3001). When this motion was overruled he perfected the instant appeal in which he seeks appellate review of alleged trial errors and other questions to which we shall presently refer.

The first claims of error made and argued by appellant are to the effect the trial court erred (1) in refusing to allow him to cross-examine appellee regarding value of the corporation's assets at time of change in ownership, ruling the same to be immaterial; (2) in overruling his motion to strike Count 2 of the petition at the close of appellee's opening statement; and (3) in overruling his motion to dismiss that Count of such pleading at the close of appellee's evidence.

In passing we pause to note, the abstracts of record, including the journal entry, reflecting the proceedings had in the trial court down to the time of rendition of the judgment, fail to disclose the motion referred to in the claim, hereinabove identified as (2), and that, under such circumstances, we might well hold it is entitled to no consideration whatsoever on appeal. Be that as it may, appellee makes no point on that score and we know appellant's counsel would not assert, in his brief, that such a motion was made if it were not so. Therefore we shall not eliminate such claim on that basis.

Merely to read the three claims of error, now under consideration, makes it obvious that all of them are based on trial errors or irregularities. Appellee insists they are not here reviewable because no one of them was called to the attention of the trial court on the hearing of the motion for a new trial. Appellant makes no denial of appellee's factual assertion in this connection and our

independent examination of the record makes it affirmatively appear that it is true. Under such circumstances we can only conclude appellee's position respecting these claims of error must be upheld. This court is committed to the rule that trial errors and irregularities must be shown by the record to have been presented to the trial court on a motion for a new trial in order to be subject to appellate review. See *Robinson v. Davis,* 162 Kan. 44, 174 P. 2d 111; *Tucker v. Hankey,* 173 Kan. 593, 250 P. 2d 784; *Place v. Kansas State Highway Commission,* 174 Kan. 296, 255 P. 2d 1004; *State v. Teter,* 180 Kan. 219, 303 P. 2d 164; *Boggs v. City of Augusta,* 180 Kan. 831, 835, 836, 308 P. 2d 72.

Notwithstanding the conclusion just announced it may be stated that, even if the foregoing claims of error were reviewable, an examination of the record leads us to the view appellant's position with respect thereto is unwarranted.

As to claim 1, it is conceded appellee was to pay $20,000 for all of the corporate stock; it is clear from allegations of the petition that appellee's suit was based on misrepresentations relating to three items only; and it cannot be denied that under the heretofore quoted provisions of the contract, execution of which is admitted, appellant was obligated to indemnify appellee for all loss and expense incurred by reason of any item not reflected in the balance sheet, regardless of the value of existing assets of the corporation. Under such circumstances it was entirely proper for the court to limit cross-examination to the items involved in the petition.

Claim 2 cannot be upheld because the record does not set forth the appellee's opening statement. In that situation it is impossible for us to determine whether such statement contained anything which would preclude appellee's recovery under Count 2 of the petition. The rule in this jurisdiction is that no judgment can be rendered on an opening statement unless it appears the party making it has admitted facts which necessarily and absolutely preclude his recovery under the issues made by the pleadings (*Rodgers v. Crum,* 168 Kan. 668, 215 P. 2d 190). Moreover appellant fails to include the ruling on such motion in his specification of errors, hence it is not subject to review (See *Picou v. Kansas City Public Service Co.,* 156 Kan. 452, 455, 134 P. 2d 686; *Davidson v. McKown,* 157 Kan. 217, 221, 139 P. 2d 421).

With respect to claim 3 whatever the appellate status of the ruling on the motion to strike Count 2 of the petition, which must be

treated as the equivalent of a demurrer to the evidence, may have been at the time of its pronouncement appellant is no longer in position to claim error with respect thereto. After such motion was overruled he proceeded to adduce his evidence and failed to renew such motion or move for a directed verdict at the close of all the evidence. In that situation he waived error, if any, in connection with such ruling and cannot now complain thereof. See *Ziegelasch v. Durr*, 183 Kan. 233, 326 P. 2d 295; *Ogilvie v. Mangels*, 183 Kan. 733, 332 P. 2d 581; *In re Estate of Rogers*, 184 Kan. 24, 334 P. 2d 830 (this day decided); 89 C. J. S., Trial, p. 511, § 666.

Appellant's fourth claim is based upon the premise the verdict is contrary to the evidence. This claim is in no sense to be regarded as founded on a trial error or irregularity, falling under the heretofore stated rule governing appellate review of such questions, and appellee makes no contention that it does. Such claim is entitled to review because the motion for new trial, one ground of which was based specifically on the statutory (G. S. 1949, 60-3001, *Fourth*) ground the verdict was contrary to the evidence, was overruled and our decisions (See, e. g., *Wilson v. Price-Raid Aud. Com.*, 31 Kan. 257, 1 Pac. 587; *Buettinger v. Hurley*, 34 Kan. 585, 9 Pac. 197; *McNally v. Keplinger*, 37 Kan. 556, 15 Pac. 534; *Kinear v. Guthrie*, 113 Kan. 692, 216 Pac. 280) holding that this court will review an objection the verdict of a jury is contrary to and/or not sustained by the evidence when a motion for a new trial, based on that ground, has been made and overruled in the district court. This was recognized early in the history of this court when in *Backus v. Clark*, 1 Kan. 303, it held that a motion for a new trial, based on the premise the verdict was contrary to the evidence, presents a question whether the prevailing party had a right to recover without such evidence, which was clearly a simple question of law and subject to appellate review. See, also, our more recent decision of *Phillipson v. Watson*, 149 Kan. 395, 87 P. 2d 567, where in substance, under procedural conditions and circumstances quite similar to those here involved, it is stated, the well-settled law of this state is that where a motion for a new trial is on the ground the judgment rendered was contrary to the evidence an appeal from the ruling upon such motion and the judgment raises that question and it may be reviewed with whatever effect the review may have upon the questions of law involved in the judgment of the court.

Under the existing facts and circumstances appellant's claim the verdict was contrary to the evidence must be and is, of necessity, dual in nature. In other words, it is directed at the verdict for actual as well as punitive damages. Each must, of course, be examined in the light of the elementary and universal rule that if a verdict or finding of fact is supported by evidence it will not be disturbed on appeal. See the numerous decisions cited in Hatcher's Kansas Digest [rev. ed.], Appeal & Error, §§ 495 to 508, incl.; West's Kansas Digest, Appeal & Error, §§ 1001 to 1013, incl.

We have carefully reviewed the record and are not disposed to prolong this opinion by detailing the evidence. It suffices to say that when examined, we have no difficulty in concluding, it discloses ample evidence on which the jury had a right to find that appellee relied on the representations made by appellant in the heretofore mentioned provisions of the balance sheet, as well as the terms of the contract; that those representations were false in that they included one nonexistent asset and excluded two liabilities, known to appellant; and that by reason of such misrepresentations appellee sustained damages in an even greater amount than the jury allowed. In that situation we are compelled to hold the verdict for actual damages must be upheld. In this connection we note appellant complains it is difficult, if not impossible, to determine, under the evidence, the precise method by which the jury arrived at the amount of such verdict. To concede there is some merit in this claim affords no sound ground for a conclusion contrary to that just announced. Under our decisions a verdict for actual damages will not be disturbed merely because we cannot definitely ascertain the precise method by which the jury arrived at the exact amount thereof if, and when, such amount is reasonably within the range of the evidence. (*Will v. Hughes,* 172 Kan. 45, 238 P. 2d 478, Syl. ¶ 6.)

It must be conceded appellant's claim regarding the state of the record with respect to evidence sustaining the verdict for punitive and/or exemplary damages presents a more difficult question. In this jurisdiction such damages may be recovered and imposed by way of punishing a defendant for malicious or vindictive acts or for a willful and wanton invasion of the plaintiff's rights, the purpose being to restrain him and deter others from the commission of like wrongs. (*Will v. Hughes,* supra, Syl. ¶ 7.)

Heretofore we have pointed out that the trial court, without objection, gave an instruction to the jury regarding the recovery

of punitive damages to which no objection was made. Since the instructions are not abstracted, we must assume that instruction correctly reflected the law of this state and, since no contention is made to the contrary, we must also assume the jury did not disregard it in determining whether damages of that character should be assessed. The jury by its verdict, as well as by its special findings (see finding 1), found that appellant was guilty of willful misrepresentations. It had the responsibility of determining whether there was reasonable excuse or justification for them and whether the acts of appellant in connection therewith were vindictive or malicious. After the jury had determined those questions adversely to appellant the trial court not only approved the verdict but denied the motion for a new trial. It cannot be denied the jury and the trial court, in approving such verdict, had a much better opportunity to determine the matters, to which reference has just been made, than this court has in examining the cold printed record. Moreover, in our opinion, what has been heretofore stated makes it appear there was some evidence on which, under our decisions, the jury based its verdict for punitive and/or exemplary damages. Under such conditions and circumstances, we are not at liberty to substitute our judgment for that of the jury or the trial court and we cannot say, as a matter of law, that such verdict is not supported by evidence.

Finding nothing in the record or in the contentions or arguments advanced by appellant which, under the existing facts and circumstances, warrants its reversal the judgment of the trial court must be affirmed.

It is so ordered.