No. 42,674

CECIL HAMILTON, *Appellant,* v. DAVID F. NEFF, d/b/a NEFF AUTO SALVAGE CO., *Appellee,* and W. M. BRILEY, *Defendant.*

(371 P. 2d 157)

Opinion filed May 5, 1962.

T. L. *O'Hara,* of Wichita, argued the cause, and *Laurence S. Holmes,* of Wichita, was with him on the briefs for the appellant.

*Robert T. Stephan,* of Wichita, argued the cause, and *Harry W. Saums* and *Eugene L. Pirtle,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ROBB, J.: This is an appeal by the plaintiff in a tort action from the order of the trial court sustaining defendant's motion for a directed verdict and overruling plaintiff's motion for new trial.

Plaintiff, a mechanic, was in need of an automatic transmission for a 1948 Buick and on February 10, 1956, he telephoned the Neff Auto Salvage Company in Wichita and talked with W. M. Briley, manager of the salvage yard, with respect to purchasing such a transmission. As a result of the conversation plaintiff drove to the yard to make the purchase and upon arrival his trade-in transmission

was unloaded from his truck in order that the replacement transmission could be loaded thereupon. However, a dispute arose over whether the difference between the transmissions should be $20.00, the price quoted by Briley to plaintiff over the telephone, according to plaintiff, or whether the difference should be $75.00 quoted by Neff to plaintiff. Briley and Neff took the position that $20.00 was the price for a standard transmission and not for an automatic transmission. A very heated argument followed. Plaintiff went out of the office, got into his truck and started to leave the premises but was detained by a car occupying the entrance to the yard. Neff left the office to wait on a customer and did not actually see what transpired after plaintiff's departure from the office. While plaintiff was waiting to leave the premises through the gate, Briley, together with another employee of Neff, carried plaintiff's trade-in transmission from their shop and threw it onto the rear end of plaintiff's truck. The evidence is conflicting between plaintiff and defendant Neff as to whether plaintiff's truck jumped backward and touched Briley at this point but an eyewitness, the wife of another customer at the salvage yard, saw Briley and the other employee put an object onto the back of plaintiff's truck, she saw the truck jump backward, and saw that one of the men either jumped or was knocked backward, but he did not fall. He then went around, picked up something, she didn't remember what it was, and hit the man in the truck.

It is not disputed that Briley in a managerial capacity lived in a trailer on Neff's salvage yard and had a duty to wait upon customers after hours; he assisted with the work around the yard, such as taking parts off automobiles, and had authority to price parts; he was in charge of other employees who worked for Neff and if an altercation took place, he was to do whatever was necessary to take care of the altercation.

At the close of plaintiff's testimony, Neff's demurrer to plaintiff's evidence was taken under advisement by the trial court. However, the next morning at the opening of court, the court announced that it was overruling the demurrer. At the end of all the evidence, Neff moved for a directed verdict and the trial court granted this motion and entered judgment in favor of defendant Neff. The trial then proceeded to judgment in favor of plaintiff and against defendant Briley, with which we are not concerned in this appeal.

The sole question presented by plaintiff's appeal is whether the

trial court erred in its order sustaining the motion for a directed verdict and judgment in favor of Neff.

Under our appellate procedure, it was necessary for Neff to move for a directed verdict after all the evidence was in to protect his right to appeal from the trial court's previous ruling on his demurrer in the event of an adverse ruling on such motion for directed verdict and final judgment against him. (*Ziegelasch v. Durr*, 183 Kan. 233, 235-236, 326 P. 2d 295; *Ogilvie v. Mangels*, 183 Kan. 733, 736, 332 P. 2d 581; *In re Estate of Rogers*, 184 Kan. 24, 27, 334 P. 2d 830; *McCarthy v. Tetyak*, 184 Kan. 126, 132, 334 P. 2d 379; *Weber v. Wilson*, 187 Kan. 214, 215, 356 P. 2d 659.) As was stated in the very able discussion in the Weber case, Neff could have renewed his demurrer or moved for a directed verdict at the close of all the evidence for the reason that either would have achieved the same result.

This action revolves around the doctrine of *respondeat superior*, meaning "Let the master answer" [Black's Law Dictionary, 4th ed., p. 1475], which is a familiar field of endeavor for this court. Plaintiff contends that after overruling the demurrer, the trial court could not thereafter sustain defendant's motion for a directed verdict because the only evidence on behalf of defendant Neff that could have been considered would have tended to strengthen rather than weaken defendant's testimony. In other words, the evidence could not be weighed by the trial court in passing upon such motion. He relies on *Rule v. Cheeseman, Executrix*, 181 Kan. 957, 317 P. 2d 472. However, in our present case the trial court was hesitant about ruling upon the demurrer, it took the same under advisement and delayed ruling thereon until the second day of trial, and during the trial on at least two occasions the court stated that the question was very close, and finally, ruled:

"The Court is of the opinion that under the decision as set down in 84 Kan. 19 that the plaintiff has failed to establish either by the evidence of the plaintiff or the defendant that at the time of the alleged assault that the defendant Briley was within the scope of his employment but was acting in a personal manner, therefore, the motion for a directed verdict should be and the same is hereby sustained.

In *Crelly v. Telephone Co.*, 84 Kan. 19, 113 Pac. 386, cited by the trial court in the above quotation, the local manager of the telephone company violently assaulted and beat plaintiff when she refused to sign a voucher for compensation at the termination of her

services. The standard laid down in that case was whether the injury complained of was committed by the authority of the master, expressly conferred or fairly implied, in the nature of the employment and the duties incident thereto (p. 23) and it was held the acts of the manager were not within the scope of his employment and the telephone company was not liable for the assault and battery.

Another case to which our attention is called is that of *Kastrup v. Yellow Cab and Baggage Co.*, 129 Kan. 398, 282 Pac. 742. Plaintiff was hired as a driver by the cab company superintendent, who had authority to hire and discharge drivers, but plaintiff could not post the required cash deposit of $15.00 to secure the cab company against loss for careless driving and his postdated check was accepted by the superintendent in lieu thereof. Following an accident and a conversation plaintiff had with the cab company secretary and the superintendent, plaintiff stopped payment on the postdated check and the superintendent committed an assault and battery upon plaintiff because he would not make the check good. This court therein stated how the case was decided by use of the following language:

"In this case the court holds that, given the two facts, authority of Harris to collect from Kastrup the amount of Kastrup's check, and assault and battery by Harris to compel Kastrup to pay, there is no reasonable ground for disagreement that authority to collect did not carry with it implied authority to assault and beat." (p. 412.)

Applying the above language to our present case, we hold that given the two facts, *authority of Briley* as manager to do the things heretofore set out and to assist in loading plaintiff's trade-in transmission back onto his truck, and the *assault and battery by Briley* which resulted when plaintiff backed up his truck and enraged Briley to the point that he picked up an upright bar from a Ford bumper to carry out the assault and battery, there is no reasonable ground for disagreement that his authority in a managerial capacity did not include authority to commit the assault and battery complained of.

In the Weber case, *supra*, plaintiff contended as does plaintiff here that the trial court after overruling the demurrer, could not then sustain a motion for directed verdict, and it was there stated:

". . . in the course of a trial the court is privileged to change its ruling, and indeed it ought always to do so if or when, upon more reflection or in the

further progress of the lawsuit, it discovers that its earlier ruling was incorrect. . . ." (p. 215.)

We might add that the trial court is not only privileged but it has the duty to change such a ruling if the change is in furtherance of justice.

From the over-all record before us and the authorities discussed we are unable to say that plaintiff has shown any reversible error on the part of the trial court either in sustaining the motion for a directed verdict and in entering judgment in favor of Neff, or in refusing to grant plaintiff a new trial on that issue.

Affirmed.