Clinton SCHULER, Jr., et al., Plaintiffs,

v.

**FAMILY BUYING POWER, INC., et al., Defendants.**

Civ. A. No. 17573-3.

United States District Court,
W. D. Missouri, W. D.

Dec. 2, 1969.

Arthur A. Benson, II, Legal Aid & Defender Society of Greater Kansas City, Kansas City, Mo., for plaintiffs.

William C. Partin, Kusnetzky & Partin, Kansas City, Mo., for Compact Vacuum Cleaners, Inc.

Gene C. Morris, Rogers, Field & Gentry, Kansas City, Mo., for Pioneer Finance Co.

## ORDER DISMISSING CAUSE FOR LACK OF JURISDICTION

BECKER, Chief Judge.

In their "complaint for damages and injunction", plaintiffs allege that in reliance upon defendants' fraudulent representations "that the named plaintiffs and other persons could receive money from the defendants in quantities sufficient to pay entirely for their purchase and to make a profit thereon simply by referring the name of acquaintances to said defendants", plaintiffs purchased certain goods from defendants. Plaintiffs therefore pray for $467.50 actual damages and $100,000 punitive damages.

Defendants have moved to dismiss for lack of jurisdiction under the diversity statute, Section 1332, Title 28, U.S.C., contending chiefly that the amount in controversy does not exceed $10,000, exclusive of costs and interests, as required by that statute. The defendants also assert that the complaint fails to state a claim and that the action is not maintainable as a class action.

Since the complaint asks only $467.50 in actual damages, if it appears legally certain under the applicable state law that plaintiffs could not recover $9532.50 or more in punitive damages, federal diversity jurisdiction fails for lack of the jurisdictional amount. Dixon v. Northwestern Nat. Bank of Minneapolis (D.Minn.) 276 F.Supp. 96. It is the duty of this court to determine whether it is "legally certain" that approximately $9532.50 in punitive dam-

ages could not be recovered. Brown v. Bank of America National Trust and Savings Assn. (N.D.Ill.) 281 F.Supp. 82, 84. Though many cases restrict the district court's discretion in cases involving actual damages, e. g. Jaconski v. Avisun Corporation (C.A.3) 359 F.2d 931, the district court can exercise a wider latitude of discretion in determining whether the damages as claimed can be recovered where punitive damages are involved. Brown v. Bank of America National Trust and Savings Assn., *supra;* Petroleum Transit Co. v. Copeland (E.D.S.C.) 240 F.Supp. 585; Anthony v. United Insurance Co. (E.D.S.C.) 240 F.Supp. 95; Thomas v. Travelers Ins. Co. (E.D. La.) 258 F.Supp. 873; Francis v. Bothwell (D.Colo.) 263 F.Supp. 354. While the amount of punitive damages lies in the sound discretion of the jury, there is no case reported wherein the Kansas courts have permitted a recovery in excess of $9532.50 in punitive damages in a case of this type when the actual damages were comparable to the amount of actual damages sought in this action. In Will v. Hughes, 172 Kan. 45, 238 P.2d 478, 486 (1951), the Supreme Court of Kansas stated that:

> "The law establishes no fixed ratio by which the excessiveness of exemplary damages to the actual damages allowed is to be measured although the actual damages is sometimes considered. In assessing exemplary damages the nature, extent and enormity of the wrong, the intent of the party committing it, and, generally, all the circumstances attending the particular transaction involved, including any mitigating circumstances which may operate to reduce without wholly defeating such damages, may be considered."

In the allegations of the complaint in this case, a case of wilful fraud is stated. Although it is alleged that the defendants made the fraudulent representations "wilfully and maliciously", the facts pleaded would indicate that this is a case where the defendants allegedly fomented a scheme to perpetrate a program of fraudulent sales on a large number of people. However, with respect to the plaintiffs in this case, there is nothing to make the wrong particularly enormous. Even so, the Kansas cases have not yet allowed a punitive damage award in the amount needed by plaintiffs to establish diversity jurisdiction in a case like that at bar.

In Motor Equipment Co. v. McLaughlin, 156 Kan. 258, 133 P.2d 149, a case decided in 1943, the Kansas Supreme Court stated the principle that a "jury is not at liberty, unrestrained, to award by way of punitive damages any amount, regardless of how large it may be * * [T]heir verdict * * * will be set aside if it is grossly excessive or appears to be the result of passion or prejudice or improper sympathy." 133 P.2d at 159. In that case, involving wrongful repossession of an automobile which caused $10,435.85 actual damages to the plaintiff, a punitive damages award of $8,000 was reduced to $4,000 by the Kansas Supreme Court.

McWilliams v. Barnes, 172 Kan. 701, 242 P.2d 1063, was an action for damages for fraud in the sale of real estate. The defendant falsely represented the plumbing to be connected to public sewers when in fact it simply drained into an underground pit. There, a jury award of $700 in actual damages and $250 in punitive damages was upheld by the Kansas Supreme Court.

Perry v. Schoonover Motors, Inc., 189 Kan. 608, 371 P.2d 152, was a case in which fraud was proved in the sale of an automobile. Plaintiff asked for $1273.68 in actual damages and $1000 punitive damages. The total jury award, which was upheld by the Kansas Supreme Court, was $1000 (and did not allocate which portion was punitive damages).

Fraud in the sale of an automobile was proved in Martin v. Hughes, 156 Kan. 175, 131 P.2d 682. The mileage was misrepresented by setting the speedometer back and by spoken misrepresentations. Actual damages of $450 and punitive damages of $10,000 were claimed.

Awards of $175 actual damages and $300 punitive damages were upheld.

In McCarthy v. Tetyak, 184 Kan. 126, 334 P.2d 379, the plaintiff alleged and proved fraud in the sale of all the corporate stock (involving a total purchase price of $20,000). The defendant misrepresented an asset to exist which in fact was non-existent and failed to disclose corporate liabilities. Plaintiffs claimed $10,840.50 in actual damages and $10,000 punitive damages. A verdict for $9,322.50 actual damages and $1,000 punitive damages was upheld.

Cases involving aggravated wrongs other than fraud in Kansas also demonstrate that it is legally certain that plaintiffs could not obtain an award in excess of $9532.50 in the case at bar. In Rooks v. Brunch, 202 Kan. 441, 449 P.2d 580, for instance, a plaintiff was assaulted and severely beaten on the face. One wound required nine stitches and the plaintiff still had a small scar and a small nodule on his forehead three years later. The trial court awarded actual damages of $1500 and punitive damages of $3500. The latter award was reduced to $2000. In Hammargren v. Montgomery Ward & Co., 172 Kan. 484, 241 P.2d 1192, a husband and wife sued for false imprisonment. A forceful arrest and detention at defendant's direction and without justification were found by the jury. Punitive damage awards of $10,000 each to the husband and wife were reduced by the Kansas Supreme Court to $2000 and $1500, respectively. Actual damages of $10,000 awarded to the wife were reduced to $3500 and actual damages of $7500 to the husband were reduced to $3000. In making the reductions, the Kansas Supreme Court noted that four previous false arrest cases had not resulted in awards of damages as high as were awarded by the jury in that case. See 241 P.2d 1192, l. c. 1207. Such meticulous attention to the ceiling amounts permitted in previous cases of the same type strongly indicates an intent uniformly to apply damage measures by the Kansas courts. When this is considered together with the principle, as expressed by plaintiffs in their brief, that "Kansas law does not require a specific finding of an intentional and ruthless desire to injure if an award of punitive damages" is to be made (See Watkins v. Layton, 182 Kan. 702, 327 P.2d 130 (1958)), the result is a judicial limitation of the amounts which might be awarded in punitive damages cases and a very close adherence to precedents in that regard.

■ The cases cited by the defendants show that, under the law of Kansas, none of the cases involving fraud, fraudulent sales, or many other wrongs, have permitted in excess of $9532.50 in punitive damages. The cases further show a close adherence to precedent in considering whether the awards are excessive. It therefore appears "legally certain" that plaintiffs could not obtain that amount of punitive damages under the Kansas law which is necessary to sustain federal diversity jurisdiction in this case. Plaintiffs argue contrariwise, stating that the yardstick for punitive damages applied by the Kansas courts principally takes account of the "repugnance" of the wrong done by the defendant. To this effect, they quote Stalker v. Drake, 91 Kan. 142, 136 P. 912, in which the Supreme Court of Kansas stated:

> "Exemplary damages are not allowed because of any special merit in plaintiff's case but are imposed by way of punishing the defendant for an invasion of the plaintiff's rights in a case characterized by malice, fraud, or a willful and wanton disregard of the rights of others."

Such dictum, however, does not affect the standards to be considered and which are set out in Will v. Hughes, *supra*, nor the close adherence to precedent by the Kansas courts. Plaintiffs argue that the award in punitive damages should be extremely high in a case such as that at bar in which it is claimed that the defendants deliberately fomented a scheme which played upon the ignorance of plaintiffs and many others who allegedly were defrauded into making similar pur-

chases from the defendants. In support of their contention that the fraud involved is "sufficiently outrageous" to justify an award of punitive damages beyond the upper limits previously observed by the courts of Kansas, the plaintiffs quote from the Kerner Report on exploitation of low income families by other commercial ventures. But the section of the report quoted does not mention either plaintiffs nor defendants, nor is it otherwise connected or made material to this case. The fraud on the plaintiffs, if proved to have been perpetrated, is all that may be considered here. Its gravity, furthermore, if shown to be great, would not have an impact above the upper limits of punitive damages previously awarded by the Kansas courts, which upper limits are significantly below the amount in excess of $9532.50 needed in this case. Even if some greater degree of "repugnance" can be assumed in this case, the limitations previously observed by Kansas would not be sizeably increased, since the degree of the wrong is only one of the factors to be considered. See Will v. Hughes, *supra;* Stalker v. Drake, *supra.* In cases involving fraud, the other factors would be, by and large, approximately constant. Plaintiff also places some reliance on Wiley v. Keokuk, 6 Kan. 59 [6 Kan. 94] (an 1870 case where $1000 in punitive damages was awarded to the Sac and Fox Indians for the fraudulent obtaining of a warrant) and Stalker v. Drake, *supra,* a case of "conspiracy of oppression and fraud", where $5000 in punitive damages was awarded. Neither of those amounts, however, approaches the amount in excess of the $9532.50 minimum sought here.

It appears that the Kansas courts sometimes take into consideration the ratio between actual damages and punitive damages for the purpose of ascertaining that a great disparity between the two types of damages does not exist. Will v. Hughes, *supra.* There is no Kansas case in which as wide a disparity is allowed as would exist between the $467.50 actual damages asked for in this case and the more than $9532.50 which would be needed to establish federal jurisdiction. In this respect, Stoner v. Wilson, 140 Kan. 383, 36 P.2d 999, in which there was an award of $110 actual damages and $1450 punitive damages, would not establish presence of the jurisdictional amount. Even applying the actual-punitive damage ratio of that case to this one would not permit the recovery of a total amount sufficient to sustain diversity jurisdiction in this case.

■ Further, it is clear that plaintiffs cannot aggregate the claims of the potential class, in a case like that at bar, to achieve federal jurisdiction. Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319.

Plaintiffs base their contention that the fraud in this case is more serious than the cases discussed hereinabove because the claims of punitive damages herein are based upon the following allegations: that the defendants "were and are engaged in a widespread practice of making fraudulently induced sales of virtually worthless merchandise"; that defendants' salesman called on plaintiffs "in the early evening hour" and told the plaintiffs that he was engaged in a national sales effort, and if the plaintiffs were qualified, they would be entitled to a free vacuum cleaner and a free accessory kit for the vacuum cleaner; that the salesman then "began a monologue on the infirmities of nationally known brand name soaps and detergents" and "showed the plaintiffs samples of a soap product made from a 'bio-concentrated' substance which was many times more powerful than soaps sold on the market [and told them that] by adding water * * * they could have the equivalent of Dove, Ajax, or any other brand name soap"; that the salesman then "gave the plaintiffs copies of 'The Executive Premium Gift Catalogue'" which included "no name other than 'Executive Premium Gift Catalog', no address to write to for orders, and no prices"; that the salesman informed plaintiffs "that by join-

ing the Family Shoppers' Union they could not only purchase any item in the catalogue at a price 30% to 60% below retail, but they could purchase *any* item at a similar discount"; then "by adding up the costs of brand name soap products used by the plaintiffs and multiplying this sum by an 'annual usage factor' and dividing by 52 he announced that the plaintiffs could save $13.90 per week by using the 'bio-concentrated' soap [and that] this savings could be obtained at a cost of only $15.60 per month for thirty (30) months"; that in addition plaintiffs were told "that the company would pay them $25.00 for each sale of like items made to friends of the plaintiffs who had been referred by the plaintiffs [and] a $150.00 cash bonus after six such referrals had purchased" and that based on past experience about 12 of every 20 referrals had purchased; that such referrals might even result in a profit for plaintiffs over the purchase price they would pay for any articles purchased; that the salesman would not leave but stayed until 1 a. m. to persuade the plaintiffs to sign a contract and note for the purchase of soap in the amount of $467.50; that the soap was delivered at 6 a. m. that same morning and "proved to be virtually worthless"; that the "companies represented to be engaged in the Family Shoppers' Union exist on paper only"; that Compact Vacuum Cleaners, Inc. "makes no referral payments and deflects inquiries to the non-existent Family Shoppers' Union"; that Pioneer Finance Company, which has a close relationship with Compact, immediately purchases all the notes taken by Compact "at a substantial discount"; and that purchasers "are concentrated in low-income areas, are predominately of racial minorities, and are usually poorly educated and unfamiliar with business transactions."

These allegations (which are assumed to be true for the purposes of this motion), however would not, with respect to plaintiffs, establish fraudulent transactions so much more flagrant than other fraudulent schemes that the Court would be justified in awarding an amount of punitive damages unprecedented in the state law which governs. Nor does the alleged widespread nature of the practice make a case for an extraordinarily great award of punitive damages when the Court, under Snyder v. Harris, *supra,* is not to consider awards of punitive damages which may be made to other members of this particular class in determining the jurisdictional amount.

Since it is therefore concluded that this cause should be dismissed for lack of the jurisdictional amount, it is unnecessary to consider the defendants' contentions that the complaint does not state a claim, that this action is not maintainable as a class action, and that punitive damages are not awardable at all.

For the foregoing reasons, it is

Ordered and adjudged that this cause be, and it is hereby, dismissed for lack of jurisdiction.