912 F.2d 429
 Michael TAYLOR and Brenda Taylor, in their own right and as
parents and natural guardians of Michael Andrew Taylor, a
minor, and as the surviving mother and father and surviving
heirs at law and co-administrators of the Estate of Jessica
Taylor, deceased, Plaintiffs-Appellants,
v.
Paula PHELAN, an individual and a member of the Kansas City,
Missouri Police Department; Richard Berkely, Arthur D.
Brookfield, II, Beverley Barker Nicks, John L. Williams,
Michael B. Meade, and Larry Joiner, as individuals and as
Members constituting the Kansas City, Missouri Board of
Police Commissioners, Defendants-Appellees.
 No. 89-3012.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 27, 1990.
 
 Robert B. Van Cleave (Frank D. Menghini and Jeanne Gorman Rau, with him on the brief) McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., for plaintiffs-appellants.
 J. Emmett Logan, Morrison, Hecker, Curtis, Kuder, & Parrish, Overland Park, Kan., for defendants-appellees.
 Before McKAY and BARRETT, Circuit Judges, and KANE,* District Judge.
 PER CURIAM.
 
 
 1
 This appeal is from a grant of summary judgment in favor of defendants, Ms. Paula Phelan, a detective of the Kansas City, Missouri, Police Department (Detective Phelan), and the Kansas City, Missouri, Board of Police Commissioners, as a Board and as individuals (Board), on the ground that the United States District Court for the District of Kansas did not have personal jurisdiction over the Missouri defendants. Plaintiffs argue on appeal that there were sufficient contacts between the defendants and the State of Kansas to support personal jurisdiction consistent with the dictates of due process. Because we hold that the plaintiffs have made the requisite prima facie showing necessary to establish personal jurisdiction, we reverse.
 
 
 2
 The facts we recite here are either agreed to by the parties or contained in evidence properly presented by the losing party in response to the motion for summary judgment. The latter are taken as true only for purposes of determining whether summary judgment should have been granted. On or about September 25, 1986, plaintiffs Michael and Brenda Taylor became aware that an individual named Michael Moore had sexually assaulted their daughter, Jessica Taylor. The assault had taken place in Kansas City, Missouri. After learning of the assault, the Taylors reported the incident to the appropriate law enforcement agency, the Kansas City, Missouri, Police Department.
 
 
 3
 The case was assigned to Detective Phelan, a member of the Sex Crimes Unit. During the course of the investigation, there were repeated telephone contacts between the Taylors in Kansas and Detective Phelan and other members of the Police Department in Missouri. As a result of interviews with Jessica and her parents, the police eventually determined that there was probable cause to issue a warrant for the arrest of Michael Moore.
 
 
 4
 On or about October 31, 1986, Detective Phelan, accompanied by Detective Wessler, who is not named in this suit, came to the Taylors' home in Kansas City, Kansas. During the visit, Detective Phelan assured Mrs. Taylor that everything was being done to investigate the matter and that a warrant would be issued for Moore's arrest. Detective Phelan also assured Mrs. Taylor that her family would be safe from harm. Mrs. Taylor has stated in an affidavit that, based on this assurance, neither she nor her husband took any precautionary measures for their safety or that of their children.
 
 
 5
 On November 7, 1986, Detective Wessler telephoned Michael Moore at Moore's Kansas home and informed him that a warrant had been issued for his arrest. Moore told Wessler that he would voluntarily surrender the next day, which he failed to do. There was no further contact between Detective Wessler or any other member of the police department and Moore. During the night of November 12, 1986, Moore broke into the Taylor's house, shot Michael Taylor in the head, injured Brenda Taylor, poured gasoline on Michael A. Taylor and his sister, Jessica, setting them afire, killing Jessica and severely injuring Michael A. Taylor. After his rampage, Moore committed suicide. He left behind a note in which he said "[i]f I'm going to get blamed for something, I want to make sure I did it."
 
 
 6
 The Taylors brought this personal injury, wrongful death and damage action against Detective Phelan, individually, and as a member of the Kansas City, Missouri, Police Department, and against the Board and its members individually, basing their federal claims on 42 U.S.C. Sec. 1983 and the state claims under the Kansas Tort Claims Act with jurisdiction based on diversity.[1] Upon defendants' motion for judgment on the pleadings, the district court dismissed the claims for lack of personal jurisdiction over the defendants. (October Order).[2]
 
 
 7
 This court reviews a district court's ruling on a jurisdictional question de novo. Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1524 (10th Cir.1987). In conducting this review, we are guided by the following standard:
 
 
 8
 [t]he plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.
 
 
 9
 Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir.1984) (citations omitted), cert. denied 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Our task thus becomes to determine from the parties' affidavits and other written materials whether the plaintiffs have established a prima facie case of minimum contacts with the forum state by each defendant sufficient to justify jurisdiction. Rambo v. American S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir.1988).
 
 
 10
 Whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action is determined by the law of the forum state. Yarbrough v. Elmer Bunker & Assocs., 669 F.2d 614, 616 (10th Cir.1982); see also Fed.R.Civ.P. 4(e). The district court in a diversity action may not exercise personal jurisdiction unless it complies with both the forum state's long-arm statute and the Constitution. Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir.1990).[3] A two-step analysis is therefore required: first, does the defendant's conduct fall within the scope of the relevant section of the long-arm statute; and second, does the exercise of personal jurisdiction comport with the requirements of due process? Volt Delta Resources, Inc. v. Devine, 740 P.2d 1089, 1093 (Kan.1987).
 
 Application of the Kansas long-arm statute
 
 11
 Defendants argue that the Kansas long-arm statute does not apply to their activities. In finding otherwise, the district court relied on Ling v. Jan's Liquors, 237 Kan. 629, 703 P.2d 731 (1985). In Ling the Kansas Supreme Court upheld Kansas jurisdiction over a Missouri liquor vendor who had sold liquor to a minor. The intoxicated minor drove into Kansas and caused injury to the plaintiff in Kansas. The court held that "it is possible to bring suit in Kansas to recover damages for injuries occurring in this state which resulted from negligent conduct outside the state," concluding that an injury which occurs in Kansas as a result of a tortious act outside the state amounts to a "tortious act within the state," thus falling within subsection (2) of the long-arm statute. Id. at 734. See Kan.Stat.Ann. Sec. 60-308(b)(2) (1983 & Supp.1989).
 
 
 12
 The district court here, noting that Kansas interprets the term "tortious act" broadly, concluded that defendants' alleged negligence in Missouri resulted in plaintiffs' injuries in Kansas, thus bringing defendants' acts "squarely within the Kansas long-arm statute." October Order at 7. Because there is no indication of any retreat under Kansas law from the broad reading of the tortious act section of the state long-arm statute as put forth in Ling, see Volt Delta Resources, 740 P.2d at 1092; Ray v. Heilman, 660 F.Supp. 122, 123-24 (D.Kan.1987) (applying Kansas law), we conclude that the district court was correct in determining that the Kansas long-arm statute applies to the defendants' actions.
 
 Constitutional requirements
 
 13
 Since we have concluded that service of process over the defendants is appropriate under the state's long-arm statute, we must now determine whether the exercise of such jurisdiction satisfies the requirements of due process. In finding that it does not, the district court relied on a test formulated by the Ninth Circuit in Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1287 (9th Cir.1977), and first cited by this court in Rambo v. American Southern Insurance Co., 839 F.2d 1415 (10th Cir.1988). As the Rambo court noted, the test is one for specific jurisdiction and provides that:
 
 
 14
 (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
 
 
 15
 (2) The claim must be one which arises out of or results from the defendant's forum-related activities.
 
 
 16
 (3) Exercise of jurisdiction must be reasonable.
 
 
 17
 Id. at 1419 n. 6 (quoting Data Disc, 557 F.2d at 1287).
 
 
 18
 After applying this test, the district court concluded that the Taylors had failed to demonstrate that their claims arose out of or resulted from the defendants' forum related activities as required by the second prong of Data Disc. October Order at 9. In arriving at this result, the court focused on the role of the assailant, Michael Moore, and concluded that " 'unilateral activity of ... a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State.' " Id. at 9 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984)). The district court found that "[d]efendant's investigation activities in Kansas, including defendant Phelan's visit to plaintiffs' home, did not give rise to plaintiffs' injuries. Instead, plaintiffs' injuries were the result of Michael Moore's actions." October Order at 9. See also December Order at 6.
 
 
 19
 The error in this analysis lies in its assumption that the Taylors are relying on Moore's activities in Kansas as the basis for their claim against these Missouri defendants and for asserting jurisdiction over them in Kansas. It is clear that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958). Nor is the unilateral activity of a third person an appropriate consideration when determining whether a defendant's contacts with a particular state are sufficient to justify the assertion of personal jurisdiction. Helicopteros Nacionales, 466 U.S. at 417, 104 S.Ct. at 1873. The Taylors here, however, are not attempting to base jurisdiction on what Moore did to them in Kansas; they point to independent acts, performed by these defendants in Kansas, and allege that those acts ultimately led or contributed to their injury at Moore's hands.
 
 
 20
 In order to survive the defendants' motion to dismiss for lack of personal jurisdiction, the Taylors need only make a prima facie showing that their claims "arise out of" or "result from" the defendants' acts in Kansas. See Behagen, 744 F.2d at 733. In their complaint the Taylors allege that the defendants' negligence proximately resulted in the death of their daughter and the injury and damage to them. Complaint at 8. The Taylors, of course, do not allege that the defendants shot them and burned their children, but rather they claim that less dramatic, but nonetheless real, acts of negligence occurred in Kansas which ultimately led to their harm. In particular, the Taylors assert that Detective Phelan assured them, while she was in their home in Kansas, that they would be safe from physical assault and harm. Complaint at 5. Mrs. Taylor has testified in an affidavit that because of this assurance, neither she nor her husband took any extraordinary precautions to protect themselves or their children from Michael Moore. The forum-related contact was the assurance; the result of this contact was the Taylors' failure to protect themselves from Michael Moore in reliance on this assurance. This claim certainly "arises out of" and "results from" Detective Phelan's Kansas contacts, and we find, therefore, that personal jurisdiction over Detective Phelan can be exercised consistent with the dictates of due process.
 
 
 21
 Our view that jurisdiction over the Board is also appropriate rests on a different analytical footing and stems from activities in Kansas by both Detective Phelan and Detective Wessler. Both detectives journeyed to Kansas and had contacts with Kansas pursuant to their jobs as employees of the Board. Detective Wessler also made a telephone call to the suspect in Kansas, informing him that a warrant for his arrest had been issued even though Detective Wessler did not then have the present ability to take Moore into custody.[4] The Taylors submitted testimony from an expert in police training and procedure that this action "constituted a serious breach of police procedure and by that act alone placed the victim [sic] in peril, a fact which should have been known to a reasonable police officer." Exhibit 3 to Doc. 78.
 
 
 22
 There is nothing in the briefs or the record to indicate that the actions taken by the detectives were not within the scope of their employment. Under the theory of respondeat superior, a principal is liable for the acts of an agent when those acts are committed in the course of or within the scope of the agent's employment. Beggerly v. Walker, 194 Kan. 61, 397 P.2d 395, 399 (1964); see also Hamilton v. Neff, 189 Kan. 637, 371 P.2d 157, 160 (1962). Following that theory, it is well-established that a principal may be subject to the jurisdiction of the court because of the activities of its agent within the forum state. Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 419 (9th Cir.1977); Davis v. Asano Bussan Co., 212 F.2d 558, 563 (5th Cir.1954); Daughtry v. Arlington County, 490 F.Supp. 307, 313 (D.D.C.1980); see also Burchett v. Bardahl Oil Co., 470 F.2d 793, 797 (10th Cir.1972).[5] Accordingly, we hold that the district court in Kansas can constitutionally exercise jurisdiction over the Board based on the acts of its agents.
 
 
 23
 In holding the Missouri defendants' contacts in Kansas sufficient to establish the Kansas federal court's jurisdiction over them for purposes of this action, we recognize that considerable factual questions still remain as to any causal connection between their alleged negligence and the harm ultimately inflicted on the Taylors by Moore. In particular, the role of Moore's actions as an intervening cause in this chain of events needs to be evaluated. These questions, however, concern the foreseeability and probability of the Taylors being harmed as a result of defendants' actions, see W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts 313 (5th ed. 1984) ("It is only where misconduct [such as that of Moore here] was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed for consequences to which such intervening acts contributed."), and not whether the Taylors' claim against defendants, valid or not, arose out of or resulted from sufficient forum contacts to permit the exercise of jurisdiction without constitutional impediment. These issues are, moreover, quintessential factual issues more properly addressed to the trier of fact for a decision on the merits. Thus, while Moore's actions may ultimately be found to have been an intervening cause which broke the causal connection to these defendants, this possibility does not prevent jurisdiction from being asserted against the Missouri defendants for a claim arising out of or resulting from defendants' Kansas contacts.
 
 
 24
 We hold, therefore, that jurisdiction over Detective Phelan in Kansas is not violative of due process standards and, that as the employer of both Detective Phelan and Detective Wessler, the Board is subject to jurisdiction in Kansas for the torts allegedly committed in that state by its agents. The order of the district court for the district of Kansas is REVERSED, and this case is REMANDED for proceedings consistent with this opinion.
 
 
 
 *
 Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 The case was originally filed in the District Court of Wyandotte County, Kansas, but was later removed by defendants to the United States District Court for the District of Kansas
 
 
 [2]
 Because the parties had presented matters outside the pleadings which were considered by the court, the court treated the defendants' motion as one for summary judgment, pursuant to Fed.R.Civ.P. 12(c). The Taylors claim that it was error for the district court to convert defendants' motion from one for judgment on the pleadings to one for summary judgment without informing them and allowing them time to complete the initial phases of discovery. We do not resolve this issue because, even if the conversion were erroneous, such error was harmless since the trial court granted the Taylors' motion for reconsideration and reexamined the record in light of all of the newly available evidence. After this reconsideration the court, on December 16, 1988, entered another order reaffirming its earlier findings (December Order)
 
 
 [3]
 The Kansas long-arm statute, Kan.Stat.Ann. Sec. 60-308(b) (1983 & Supp.1989), is liberally construed to allow the exercise of personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the fourteenth amendment. Volt Delta Resources, Inc. v. Devine, 241 Kan. 775, 740 P.2d 1089, 1092 (1987)
 
 
 [4]
 So long as it creates a substantial connection, even a single telephone call into the forum state can support jurisdiction. Rambo, 839 F.2d at 1418
 
 
 [5]
 While we recognize that the principle of respondeat superior will not apply to implicate the Board in the Taylors' claims under 42 U.S.C. Sec. 1983, see Meade v. Grubbs, 841 F.2d 1512, 1531 (10th Cir.1988) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)), the Taylors also bring claims under the Kansas Tort Claims Act, Kan.Stat.Ann. Secs. 75-6101 through 6119, (1989). In contrast to section 1983, the Kansas Tort Claims Act provides that a governmental entity shall be liable for damages caused by the negligent or wrongful act or omission "of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of the state." Id. at Sec. 75-6103(a). Thus, under the proper circumstances, the Board may be held liable for the actions of its agent, Detective Phelan, as well as for the actions of its agent, Detective Wessler, even though the latter is not a named defendant in this suit