**HUDYE SOIL SERVICES, INC., Plaintiff,**

v.

**JOHN TYLER, Wheaties, Inc., John Walker, Jim Baker and KB Samplers, Defendants.**

**No. 98–1286–JTM.**

United States District Court, D. Kansas.

April 8, 1999.

Kent G. Voth, Triplett, Woolf & Garretson, LLC, Wichita, KS, Grant M. Glenn, Woner, Glenn, Reeder & Girard, Topeka, KS, Michael V. Foust, Goodland, KS, for plaintiff.

Karry E. McQueen, Sharp, McQueen, McKinley, Dreiling, Morain & Tate, P.A., Liberal, KS, for John Tyler, Wheaties, Inc., defendants.

Robert E. Durrett, Coombs & Durrett, Chartered, Wichita, KA, Paul S. McCausland, Young, Bogle, McCausland, Wells & Blanchard, Wichita, KS, for John Walker, Jim Baker, defendants.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

John Walker and Jim Baker are named as individual defendants in this case. They have filed a motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Fed.R.Civ.P. 12(b)(2) and (3) or in the alternative to dismiss under the doctrine of forum non conveniens. Plaintiff has responded and Mr. Walker and Mr. Baker have filed a reply. After reviewing the parties' submissions, the court finds it is without personal jurisdiction over Mr. Walker and Mr. Baker. For the reasons set forth below, their motion to dismiss is granted.

### I. Factual Background

Plaintiff is a corporation, organized under the laws of and having its principal place of business in the province of Saskatchewan, Canada. John Tyler is a Kansas resident who is affiliated with the defendant, Wheaties, Inc. ("Wheaties"), a corporation organized under the laws of the state of Kansas. John Walker is a resident of Casa Grande, Arizona and is engaged in farming and custom harvesting in Arizona. He performs custom harvesting through a corporation, John Walker Trucking, Inc. ("JWT"). Jim Baker is a resident of Spearman, Texas, and is engaged in custom harvesting throughout the Southwest, Rocky Mountains and Great Plains.[1]

Plaintiff entered into a series of Equipment Rental Agreements with Mr. Tyler and Wheaties to rent one John Deere 8400 tractor, eight John Deere combines and eight platforms. The parties entered into the agreement for the tractor in 1995, and

---

1. According to Mr. Baker's affidavit, he has not transacted any business in the state of Kansas, during the past eight to ten years. He has annual contracts to harvest wheat in Arizona.

they entered into the agreement for the combines and platforms in 1996.

In the spring of 1996, the United States Department of Agriculture Animal and Plant Health Inspection Service (APHIS) threatened to ban the harvesting of the 1996 Arizona wheat crop because of a potential infestation by a fungus known as Karnal Bunt. APHIS conducted several public meetings with Arizona farmers and custom harvesters to discuss the sampling protocol to be required by APHIS and the possible method for carrying out sampling in order for Arizona's 1996 wheat harvest to proceed. Mr. Tyler initially learned about the Karnal Bunt problem in Arizona on the news. He contacted Mr. Walker and told him they should contact APHIS to see if they could provide assistance in testing the wheat fields. At one of the APHIS meetings, Mr. Walker proposed a method to complete sampling of the Arizona wheat fields within a time period that would permit completion of the 1996 wheat harvest.

As a result of Mr. Walker's proposal, JWT, as general contractor, entered into an agreement with APHIS to conduct the sampling for the entire state of Arizona. JWT subcontracted the harvesting work to Field Samplers, L.L.C. ("FS"), an Arizona limited liability company created by JWT and Wheaties to harvest samples and further subcontract sampling work to other custom harvesters. Shortly after its inception, Mr. Baker d/b/a Baker Harvesting, joined FS as a member.

FS did business as and was sometimes referred to as "KB Samplers" in connection with the sampling program. No separate legal entity or partnership operating under the name KB Samplers has or did exist.

Numerous custom harvesters participated in the sampling program.[2] The contract between APHIS and JWT required all combines used for the Karnal Bunt sampling program to be sanitized with a sodium hypochlorite solution after collecting each sample. The sanitation process caused damage to nearly all combines involved in the sampling program. As a result of the damage to combines owned and/or leased by JWT, Jim Baker, and Wheaties,[3] JWT, the general contractor, and FS presented federal tort claims to APHIS in Arizona. APHIS settled individual property damage claims with JWT, Baker Harvesting, and Wheaties pursuant to a confidential settlement agreement executed on May 19 and 21, 1997.

After the settlement agreement was reached, Mr. Walker had limited contacts with plaintiff within the state of Arizona by mail or telephone,[4] but Mr. Baker had no personal conversations or correspondence with plaintiff about matters alleged in the complaint. Mr. Walker and Mr. Baker claim that all transactions allegedly giving rise to claims against them occurred within the state of Arizona. Plaintiff concedes the sampling work under the APHIS contract was performed in Arizona and that the equipment was damaged in Arizona. It does not dispute the confidential settlement agreement was executed in Arizona. However, plaintiff contends that all three individual defendants transacted business in Kansas, resulting in the transport of its property from Kansas to Arizona for the benefit of Mr. Walker and Mr. Baker. Mr. Walker and Mr. Baker have supplemented their reply to include information that il-

---

**2.** Plaintiff claims seven of the eight combines that were being leased to Tyler and Wheaties were used in the sampling program.

**3.** The record is unclear as to whether the damaged combines were all leased from plaintiff, or whether defendants owned some or all of them. Plaintiff alleges Mr. Tyler's contribution to the Karnal Bunt sampling program consisted of his services and his leasehold interest in seven of the combines and seven of the platforms rented from plaintiff.

**4.** Hudye apparently thought it was entitled to money from the settlement agreement and was trying to obtain some of those funds.

lustrates the combines plaintiff leased to Wheaties had very little connection to Kansas.[5]

Plaintiff alleges that Mr. Tyler and Wheaties are in default in their payments under the rental agreements, further alleging that Mr. Tyler issued two insufficient funds checks to plaintiff in the total amount of $154,125.00. Plaintiff also appears to be seeking compensation for the damage to its combines from the sanitation process. Among other things, plaintiff alleges that a constructive trust was formed with the APHIS settlement proceeds, requiring the defendants to pay plaintiff those proceeds and that the defendants breached a duty by failing to do so. It claims the defendants have been unjustly enriched by their wrongdoing.

## II. Legal Standards

Mr. Walker and Mr. Baker have moved to dismiss for lack of personal jurisdiction and improper venue. The standard that governs a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well-established:

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent that they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d

171 (1985) (citations omitted); *Key Indus., Inc. v. O'Doski, Sellers & Clark, Inc.,* 872 F.Supp. 858, 860–61 (D.Kan.1994).

■ Likewise, upon a defendant's challenge to venue, the plaintiff has the burden of establishing that venue is proper in the forum state. *M.K.C. Equip. Co. v. M.A.I.L. Code, Inc.,* 843 F.Supp. 679, 682 (D.Kan.1994). The court uses basically the same procedure to decide a motion to dismiss for improper venue as it does for deciding a motion to dismiss for lack of personal jurisdiction. *Id.*

## III. Analysis

### A. Personal Jurisdiction

In analyzing a motion to dismiss for lack of personal jurisdiction, the court must conduct a two-part inquiry. First, it must determine if the defendants' conduct falls within one of the provisions of the forum state's long arm statute, which in this case is Kan. Stat. Ann. § 60–308(b). Second, the court must determine whether the defendants had sufficient "minimum contacts" with the forum state to satisfy the constitutional guarantee of due process. *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1357 (10th Cir.1990); *Electronic Realty Assocs., L.P. v. Paramount Pictures Corp.,* 935 F.Supp. 1172, 1175 (D.Kan.1996).

■ The Kansas long arm statute provides in part as follows:

> *Submitting to jurisdiction—process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual person's representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

> "Jon Tyler, Wheaties, Inc., has custom harvested in the Burlington, Cheyenne Wells, Sheridan lake, and Arriba, Colorado for many years."

---

**5.** In a letter dated March 27, 1996, plaintiff informs Mr. Tyler that it will deliver six of the leased combines to Alva, Oklahoma. In a memo dated July 15, 1996, plaintiff states,

(1)Transaction of any business within this state.... [6]

Kan. Stat. Ann. § 60–308(b). The Kansas long arm statute is to be liberally construed to assert personal jurisdiction over nonresident defendants to the full extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution. *In re Hesston Corp.*, 254 Kan. 941, 951, 870 P.2d 17 (1994).[7]

■ The Kansas Supreme Court has addressed what it means to "transact business" within the state:

> "Business" is transacted within the state when an individual is within or enters this state in person or by agent and, through dealing with another within the state, effectuates or attempts to effectuate a purpose to improve his economic conditions and satisfy his desires. The transaction of business exists when the nonresident purposefully does some act or consummates some transaction in the forum state.

*Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 778, 740 P.2d 1089 (1987) (citations omitted). With the advent of modern technology, a defendant need not physically enter the state to transact business within its borders. *Environmental Ventures, Inc. v. Alda Servs. Corp.*, 19 Kan. App.2d 292, 296, 868 P.2d 540 (1994). However, the "mere negotiation of a sales transaction, or placement of an order for goods, over the telephone with persons residing in Kansas does not invoke the benefits and protections of the laws of this state." *Green Country Crude, Inc. v. Avant Petroleum, Inc.*, 648 F.Supp. 1443, 1451 (D.Kan.1986). Furthermore, as a general rule, letters and telephone calls are insufficient to establish personal juris-

diction. *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir.1995). "Finding the requisite 'transaction of any business' demands an examination of all of the defendant's activities within Kansas which related to the present cause of action." *Environmental Ventures, Inc.*, 19 Kan. App.2d at 296, 868 P.2d 540.

■ The Tenth Circuit has endorsed a three-part test to determine whether nonresident defendants' contacts with the forum state are strong enough to justify the exercise of personal jurisdiction. *See Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1419 n. 6 (10th Cir.1988). First, the defendants must have sufficient contact with the forum state so that the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. Second, the defendants must have purposefully availed themselves of the privileges of conducting activities in the forum state. Finally, the quality and nature of the defendants' contacts must be such that it is reasonable, in the context of our federal system of government, to require the defendant to appear in the forum state. *Id.; Marcus Food Co. v. Family Foods of Tallahassee, Inc.*, 729 F.Supp. 753, 757–58 (D.Kan.1990).

■ A defendant can establish contacts with the forum state sufficient to support jurisdiction in one of two ways. Specific jurisdiction exists when a defendant purposely avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, and the claims against him arise out of those contacts. *Kuenzle v. HTM Sport–Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir.1996). General jurisdiction lies when the defen-

---

**6.** In the defendants' memorandum in support of their motion to dismiss, they addressed Kan. Stat. Ann. § 60–308(b)(1) (transacting business within the state), (b)(2) (committing a tortious act within the state), and (b)(5) (entering into an express or implied contract with a resident of the state). In its response, plaintiff attempts to invoke jurisdiction pursuant to (b)(1) only. Therefore, the court need

not analyze personal jurisdiction under (b)(2) and (b)(5).

**7.** Based on the holding of *Hesston Corp.*, it may not be necessary to determine whether the statute provides jurisdiction. Nevertheless, the court will conduct the analysis established by *Equifax Servs.*

dant's contacts with the forum state are so continuous and systematic that the state may exercise personal jurisdiction even when the claims are unrelated to the defendant's contacts with the forum state. *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

■ Plaintiff asserts no basis for general jurisdiction. Further, the court finds plaintiff has failed to establish specific jurisdiction with respect to Mr. Walker and Mr. Baker. Neither one of these individuals "purposely availed" himself of the privilege of conducting activities within Kansas. It appears Mr. Walker did have telephone contact with Mr. Tyler, a Kansas resident, but that alone is insufficient, as Mr. Tyler initiated the conversations for his own economic benefit. Furthermore, the claims against Mr. Walker and Mr. Baker do not arise out of the contacts between Mr. Tyler and Mr. Walker. Any claims plaintiff may have against Mr. Walker and Mr. Baker arise out of the sampling program and related matters, which occurred entirely in Arizona. Finally, it would be unreasonable to require Mr. Walker and Mr. Baker to appear in this forum. Neither has transacted business in Kansas, nor have they engaged in any other activities which would subject them to this court's jurisdiction.

As those defendants point out, their sole connection with Kansas is that Wheaties and its owner, Mr. Tyler, were Kansas residents and may have communicated from Kansas by telephone with Mr. Walker. The communication between Mr. Tyler and Mr. Walker is simply not enough to establish personal jurisdiction over Mr. Walker, especially since plaintiff's claims against Mr. Walker and Mr. Baker seem to arise from events that occurred after the initial conversations with Mr. Tyler. As for Mr. Baker, he did not even have conversations with Mr. Tyler in Kansas. Plaintiff does not allege any Kansas connection to Mr. Baker, other than the fact he became a member of FS, which hap-

pened to include a Kansas resident member. That connection is clearly inadequate to support personal jurisdiction over Mr. Baker.

## B. Venue

■ Dismissal as to Mr. Walker and Mr. Baker is further mandated by 28 U.S.C. § 1391(a), which provides that in diversity actions a claim may be brought in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ..., or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Plaintiff contends both (a)(2) and (a)(3) apply in this case. Subsection (a)(3) does not apply because this case could have been brought in Arizona. Therefore, for venue to be proper, it must fall within subsection (a)(2).

Under subsection (a)(2), " '[a] substantial part of the events' may have occurred in more than one district, and venue may be proper even if contacts with another district were more substantial." *Barteldes v. Hyman Properties, Inc.*, No. 98–2333–JWL, 1998 WL 928395, at *4 (D.Kan. Nov.9, 1998). " 'The court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim.' " *Id.* (quoting *Andrean v. Secretary of the United States Army*, 840 F.Supp. 1414, 1422 (D.Kan. 1993)). "The forum activities must have been events significant to the plaintiff's claims." *Id.*

Here, Mr. Tyler's conversations with Mr. Walker did not play a substantial role in the circumstances leading up to plaintiff's claim for damages to its combines. Those circumstances—*i.e.*, the formation of the L.L.C. to perform the contract for

the sampling program, the sampling program itself, the sanitation process, and the settlement agreement—all took place in Arizona, not Kansas. Therefore, as to Mr. Walker and Mr. Baker, proper venue lies only in Arizona.

## C. Forum Non Conveniens

Mr. Walker and Mr. Baker seek dismissal pursuant to Fed.R.Civ.P. 12(b)(2) and (b)(3) and pursuant to the doctrine of forum non conveniens.

The doctrine of forum non conveniens does not come into play unless the court in which the action was brought has both subject matter and personal jurisdiction and is a proper venue. If the case is wanting in any of those respects, the action should be dismissed on that ground without reaching questions of forum non conveniens.

15 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3828, at 287 (2d ed.1986). Because the court lacks personal jurisdiction over Mr. Walker and Mr. Baker, it is not necessary to address the issue of forum non conveniens.

IT IS THEREFORE ORDERED this 7th day of April, 1999, that Mr. Walker's and Mr. Baker's motion to dismiss (dkt. no. 18) is granted.