Patrick WEMPE, an individual,
Plaintiff,

v.

SUNRISE MEDICAL HHG, INC., a California corporation; Mechanical Application Designs, Inc., a Texas corporation; and Dalva Alexander, an individual, Defendants.

No. 99–4041–SAC.

United States District Court,
D. Kansas.

Aug. 26, 1999.

Ron C. Campbell, Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, KS, William E. Corum, Blackwell Sanders Peper Martin LLP, Overland Park, KS, Philip J Giacinti, Jr, Procopio, Cory, Hagreaves & Savitch LLP, San Diego, CA, David B. Raymond, Blackwell Sanders Peper Martin LLP, Overland Park, KS, for defendant.

Gary E. Laughlin, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for plaintiff.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

The case comes before the court on a motion to dismiss for improper venue or, in the alternative, to transfer for improper venue, 28 U.S.C. § 1406(a), or, in the alternative, to transfer for convenience of the parties and witnesses, 28 U.S.C. § 1404(a), filed by the defendant Sunrise Medical HHG, Inc. ("Sunrise") (D.Kan.6), and a motion to dismiss for lack of personal jurisdiction or for failure to state claim filed by the defendants Mechanical Application Design, Inc. ("MAD") and Dalva Alexander ("Alexander") (D.Kan.16). The plaintiff Patrick Wempe ("Wempe") opposes both filed motions.

Wempe brings this action asserting claims under both federal law (Lanham Act and Patent Act) and state law (Uniform Trade Secrets Act of Kansas and state common law) against the defendants Sunrise, MAD, and Alexander. Common to his different claims are the following allegations. Wempe invented and built a Sliding Tilt Mechanism for use with a power wheelchair frame. Wempe went to Texas and displayed his invention in confi-

dence to the defendants MAD and Alexander. Instead of entering into a licensing agreement with Wempe, the defendants MAD and Alexander misappropriated his invention, filed patent applications on it without identifying Wempe as the inventor, and manufactured and sold a wheelchair seating system that incorporated Wempe's invention. The defendant Sunrise subsequently acquired all operating assets of MAD, including the rights to this seating system and the pending patent applications on it. The defendant Sunrise is now manufacturing and selling the seating system which incorporates the proprietary Sliding Tilt Mechanism design of Wempe.

As set forth in his complaint, the plaintiff alleges that the defendant Sunrise is a California corporation with its principal place of business in Longmont, Colorado. The defendant MAD is a Texas corporation with its principal place of business at Katy, Texas, and the defendant Alexander is an individual residing in Katy, Texas. The plaintiff further alleges in his complaint that venue in the District of Kansas is proper "pursuant to 28 U.S.C. §§ 1391 and 1400(a)." The plaintiff alleges the following six causes of action: (1) false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) correction of inventorship pursuant to federal patent law, 35 U.S.C. § 116; (3) misappropriation of trade secrets in violation of the Uniform Trade Secrets Act of Kansas, K.S.A. 60–3320, *et seq.;* (4) common-law breach of contract; (5) common-law unfair competition; and (6) common-law fraud. The court will follow the logical progression of deciding the personal jurisdiction challenges first, the venue issues second, and the other issues last. *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).

**Issue I: Whether sufficient minimum contacts with Kansas exist so as to exercise personal jurisdiction over the defendant Alexander?**

■ The burden rests with the plaintiff to prove personal jurisdiction over the defendant Alexander. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). Discretion resides with the district court to choose the appropriate procedure for deciding a motion to dismiss for lack of personal jurisdiction. A court may decide these jurisdictional issues by reference to affidavits, after a pretrial evidentiary hearing, or at trial if the issues are intertwined with the merits of the suit. *Federal Deposit Ins. Corp. v. Oaklawn Apartments,* 959 F.2d 170, 174 (10th Cir.1992). When opposing a motion to dismiss supported by affidavits and other written materials, the plaintiff need only make a prima facie showing and may rely on the "well pled facts" of the complaint. *Id.* at 174. Well-pled facts, as opposed to conclusory allegations, are accepted as true if uncontroverted by the defendant's affidavits. *Wenz v. Memery Crystal,* 55 F.3d 1503, 1508–09 (10th Cir.1995). Factual disputes created by conflicting affidavits are resolved in the plaintiff's favor, *Oaklawn Apartments,* 959 F.2d at 174, "and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party," *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984) (citation omitted), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). To overcome a prima facie showing, the "defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' " *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). If the factual disputes require an evidentiary hearing or must await a trial on the merits, the plaintiff must then prove the critical jurisdictional facts by a preponderance of the evidence. *Oaklawn Apartments,* 959 F.2d at 174.

■ " 'Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by the due process clause, we proceed directly

to the constitutional issue.'" *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d at 1090 (quoting *Federated Rural Electric Ins. Corp. v. Kootenai Electric Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994)) (internal citation omitted) (citing *Volt Delta Resources, Inc. v. Devine*, 241 Kan. 775, 777, 740 P.2d 1089 (1987)). Because this case also arises under federal question jurisdiction, the court examines due process under the Fifth Amendment's filter which is the same as the Fourteenth Amendment analysis. *Packerware Corp. v. B & R Plastics, Inc.*, 15 F.Supp.2d 1074, 1077 (D.Kan.1998).

Under the Fourteenth Amendment, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *OMI Holdings*, the Tenth Circuit summarized the two-fold inquiry involved with an assertion of specific jurisdiction:

First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted) (emphasis in the original). Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Id.* at 113, 107 S.Ct. 1026. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. *See id.*

149 F.3d at 1091. These two components of the due process inquiry "'are related' having 'both originated' in the idea that a court cannot subject a person to its authority where the maintenance of the suit would offend 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)), *cert. denied*, 519 U.S. 1006, 117 S.Ct. 508, 136 L.Ed.2d 398 (1996)). There is an "interplay" between them, "such that, 'depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.'" *Id.* The factors may bolster the reasonableness of exercising jurisdiction where there has been "a lesser showing of minimum contacts," and the factors "may be so weak" as to render the exercise of jurisdiction a violation of due process. *Id.*

Relying on *J.E.M. Corp. v. McClellan*, 462 F.Supp. 1246 (D.Kan.1978), Wempe argues that Alexander's fraudulent statements during telephone conversations with Wempe in Kansas satisfies due process requirements. In *J.E.M. Corp.*, the defendant's contact with the forum was limited to a single telephone call initiated by the plaintiff concerning a matter with which the defendant was familiar. Judge Theis there held that "[t]he intentional tortious act here causing injury to a resident in this forum in and of itself satisfies the criteria of *International Shoe* on a claim for damages arising from that act." 462 F.Supp. at 1255. Neither party devotes much effort to researching the current Tenth Circuit law on this issue or to applying the law to the facts here.

The plaintiff Wempe avers that the defendant Alexander initiated two telephone

calls to Topeka, Kansas. In the first conversation, Alexander said he was interested in Wempe's invention and invited Wempe to bring his prototype to Texas and discuss a potential agreement whereby MAD would manufacture and use Wempe's invention. According to Wempe, the second call occurred several days after his visit to Texas. Alexander telephoned Wempe saying that he and MAD had no further commercial interest in his invention. The plaintiff asserts personal jurisdiction over Alexander exists solely based on these two telephone calls.

"It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077 (10th Cir.1995) (citations omitted). The facts facing the Tenth Circuit in that case are relevant to consider here. The plaintiff Far West Capital ("FWC"), a Utah corporation, was interested in developing land in Nevada that was owned by the defendant Towne, a Nevada resident. The parties conducted extensive negotiations in Nevada, but the parties also exchanged phone calls and Towne sent approximately twelve faxes to FWC in Utah regarding changes in the leases. Towne also hired a consultant who was a Utah resident and who occasionally retrieved materials from FWC in Utah. The negotiations resulted in a leasing agreement that included a provision establishing that Nevada law would govern it. FWC established an escrow account in Utah. When FWC began negotiating with third parties for financing the construction of a power plant, the defendant refused to cooperate with FWC and allegedly interfered intentionally with FWC's contractual relations. FWC brought a diversity action in the United States District Court for the District of Utah, alleging breach of contract and several business torts, including intentional interference with contractual relations, economic duress, and bad faith breach of contract. The district court granted Towne's motion to dismiss for lack of personal jurisdiction. *Id.* at 1073–74.

On appeal, the Tenth Circuit affirmed holding, *inter alia,* that FWC unilaterally chose the location of the escrow account, that Towne's solicitation in Utah was remote in time from the negotiations leading to agreement, that Towne's agent in Utah was not enough to create personal jurisdiction, and that the telecommunications and correspondence were insufficient. *Id.* at 1076–77. The Tenth Circuit also rejected FWC's argument that Towne committed an intentional tort that subjected Towne to personal jurisdiction under *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) [1]:

> Our review of these post-*Calder* decisions indicates that the mere allegation

1. In *Calder,* an entertainer claiming defamation sued in California the author and editor of an article that appeared in the National Enquirer. The reporter did most of his research in Florida but telephoned California. The editor had no such contacts with California, other than reviewing and approving the article. The Court upheld the exercise of personal jurisdiction:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California. (citations omitted)

> . . . .

> ... [T]heir intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. (citations omitted). An individual injured in California need not go to Florida to seek redress from

that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts. Instead, in order to resolve the jurisdictional question, a court must undertake a particularized inquiry as to the extent to which the defendant has purposefully availed itself of the benefits of the forum's laws. The Supreme Court's observations in *Burger King,* although specifically addressed to a breach of contract claim, provide a useful framework. *See Burger King,* 471 U.S. at 478–79, 105 S.Ct. 2174. We therefore examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479, 105 S.Ct. 2174. In addition, we examine the contacts created by the out-of-state defendant in committing the alleged tort. (citations omitted).

. . . Unlike *Calder,* where the defendant's actions "were expressly aimed at" the forum jurisdiction and the forum jurisdiction was "the focal point" of the tort and its harm, the focal point of this relationship was Nevada rather than Utah. *Calder,* 465 U.S. at 789, 104 S.Ct. 1482. In short, there is no indication that Utah had anything but a fortuitous role in the parties' past dealing or would have any role in their continuing relationship.

46 F.3d at 1079–80.

The plaintiff has made a prima facie showing that Alexander purposefully directed his activities at a resident of Kansas and that the plaintiff's claim arises out of or results from the defendant's contacts with this forum. "Even a single purpose-

ful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact. *See McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)." *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 419 (10th Cir.1996). The defendant Alexander purposefully solicited and induced the plaintiff to rely on certain representations made during their telephone conversations. *See Rambo v. American S. Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988) (telephone calls and letters may provide sufficient contacts to satisfy due process); *Continental American Corp. v. Camera Controls Corp.,* 692 F.2d 1309, 1314 (10th Cir.1982) ("We recognize that modern commercial transactions often involve little contact with the forum beyond that of mail and telephone communications.").

 Alexander initiated the first telephone call to Kansas for the purpose of soliciting Wempe into revealing his proprietary design known as the Sliding Tilt Mechanism. In that call, Alexander represented that he was interested in manufacturing wheelchairs that incorporated Wempe's invented design. Alexander also invited Wempe to bring his prototype to Texas for a demonstration and for a discussion of a potential agreement. In reliance on Alexander's representations, Wempe took his prototype to Texas and demonstrated it to Alexander. As alleged and averred by Wempe, Alexander then called Kansas again and told Wempe that he and MAD were not interested in the Sliding Tilt Mechanism. Wempe alleges that Alexander in the second call fraudulently concealed his plans and intentions to misappropriate his proprietary design. Through these phone calls made to Wempe in Kansas, Alexander purposely directed his activities at Kansas allegedly

persons who, though remaining in Florida, knowingly cause the injury in California. 465 U.S. at 788–90. Drawing from this passage, the courts have articulated what is known as the *"Calder* 'effects test.'" *IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254,

261 (3rd Cir.1998). "The majority of . . . circuits [including the Tenth Circuit] that have considered the application of *Calder* to business torts have adopted a narrow construction." *Id.*

to gain access to a proprietary design developed here, kept in confidence here, and protected here; to misrepresent his intentions for wanting a demonstration of the Sliding Tilt Mechanism; and to conceal his unlawful intentions once he gained access to this proprietary design. The record is undisputed that Wempe suffered financial effects in Kansas as a result of this intentional tortious activity which Alexander directed at Kansas. Nor is there a dispute that the defendant necessarily knew that the plaintiff, as an individual inventor residing in Kansas, would suffer the brunt of this financial harm where he resides, does his work, and conducts his business. This simply is not a case where Kansas played only a fortuitous role in the parties' relationship or where the connection to Kansas is limited to it being the plaintiff's domicile. Thus, under the narrow construction of the *Calder* effects test, the court finds that the plaintiff has made a prima facie showing that the defendant Alexander has such minimum contacts with Kansas that he should reasonably anticipate being haled into court here.[2]

The next inquiry is whether the exercise of personal jurisdiction is reasonable under the circumstances particular to this case, considering: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings,* 149 F.3d at 1095 (citing *Asahi,* 480 U.S. at 113, 107 S.Ct. 1026). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477, 105 S.Ct. 2174. The defendant Alexander argues three of these factors, but he does not present a compelling case.

Other than noting his residency in Texas and his lack of other contacts with Kansas, the defendant Alexander does not demonstrate the burden he would suffer in defending this suit in Kansas. The record shows Alexander to be represented by the same counsel as MAD and his position and interests in this litigation to be aligned with MAD. Considering the apparent and ongoing relationship between Alexander and MAD, the court will not presume an undue burden on Alexander without specific evidence. Finally, this factor is not particularly noteworthy here, because this case carries no hint of being an instance where the plaintiff files vexatious claims in a distant forum where the burden of appearance is onerous to the defendant. *See OMI Holdings,* 149 F.3d at 1096.

**2.** Alexander devotes a single paragraph and cites a single case to the argument that his telephone calls to Kansas were done in his capacity as an officer of MAD and that such contacts do not provide personal jurisdiction over him in his individual capacity. The court summarily rejects this argument on the weight of the Tenth Circuit's holding in *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996):

"Knowles, however, contends that the contacts of the two corporations cannot be factored into the analysis of whether he has minimum contacts with the United States. His argument is that the jurisdiction of the district court based upon these corporate contacts does not extend to him. Knowles is mistaken. As the Supreme Court held in

*Calder v. Jones,* employees of a corporation that is subject to the personal jurisdiction of the courts of the forum may themselves be subject to jurisdiction if those employees were primary participants in the activities forming the basis of jurisdiction over the corporation. *Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). That the subpoenas were served on Knowles without explicit reference to his former capacity as president of the two corporations has no bearing on whether the district court has jurisdiction over him with regard to the corporate activities in which Knowles was a primary participant. Personal jurisdiction over him would extend at least as far as matters relating to the activities of the two corporations in the forum in which he was a primary participant."

■ "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings,* 149 F.3d at 1096 (citation omitted). A forum state's interest is also implicated when the dispute entails the application of that state's laws. *See Asahi,* 480 U.S. at 115, 107 S.Ct. 1026. The plaintiff is a Kansas resident, and several of his claims involve the application of Kansas law.[3] This factor clearly and heavily weighs in favor of the plaintiff.

The plaintiff's chances for obtaining convenient and effective relief against Alexander would be diminished if he were forced to litigate his claims separately in another forum. Kansas is clearly the forum that offers plaintiff the most effective and convenient relief.

In short, the court finds that the plaintiff has made a prima facie showing that Alexander has sufficient ties with Kansas as to permit the constitutional exercise of personal jurisdiction over him. Though having made this showing, the plaintiff eventually must establish jurisdiction by a preponderance of the evidence either at a pretrial hearing or at trial. The court denies the Alexander's pretrial motion to dismiss for lack of personal jurisdiction.

**Issue II: Whether Kansas is a proper venue, and if not, whether the case should be dismissed or transferred to another district?**

■ When a defendant challenges venue, the plaintiff must establish that venue is proper in the forum state. *M.K.C. Equipment Co. v. M.A.I.L.Code, Inc.,* 843 F.Supp. 679, 682 (D.Kan.1994). The plaintiff's burden is to show "that venue is proper as to each claim." *Gwynn v. Transcor America, Inc.,* 26 F.Supp.2d 1256, 1261 (D.Colo.1998) (and "as to each defendant") (citation omitted); *see Rothstein v. Carriere,* 41 F.Supp.2d 381, 386 (E.D.N.Y.1999); *Monarch Normandy Square Partners v. Normandy Square Associates Ltd.,* 817 F.Supp. 899, 903 (D.Kan. 1993). Because improper venue is a defense personal to each defendant, a defendant "may not challenge venue on the ground that it is improper as to a co-defendant." *Pratt v. Rowland,* 769 F.Supp. 1128, 1132 (N.D.Cal.1991) (citing in part *Camp v. Gress,* 250 U.S. 308, 316, 39 S.Ct. 478, 63 L.Ed. 997 (1919)). The procedure governing a motion to dismiss for improper venue is basically the same as that used in deciding a motion to dismiss for lack of personal jurisdiction. *Hudye Soil Services, Inc. v. Tyler,* 46 F.Supp.2d 1157, 1161 (D.Kan.1999).

The defendant Sunrise argues this action should be dismissed for lack of venue. In his complaint, the plaintiff asserts Kansas is a proper venue under 28 U.S.C. §§ 1391 and 1400(a). (D.Kan. 1, ¶ 3). Looking first at the plaintiff's patent claim, venue under § 1400 is based on "where the defendant resides." This necessarily " 'includes any district where there would be personal jurisdiction over the corporate defendant at the time the

---

**3.** In Kansas, tort actions are governed by the *lex loci delicti* doctrine, that is, the substantive law of the state where the tort occurred applies. *Ling v. Jan's Liquors,* 237 Kan. 629, 634, 703 P.2d 731 (1985). Under this doctrine, "the situs of the injury determines the governing law," even if the tortious act occurred in another state. *Id.* "Under this rule, the tort is deemed to have occurred where the wrong was felt." *St. Paul Furniture Mfg. Co. v. Bergman,* 935 F.Supp. 1180, 1187 (D.Kan. 1996). Having alleged a financial injury and residing in Kansas, the plaintiff's financial injury was necessarily felt in Kansas. *Altrutech, Inc. v. Hooper Holmes, Inc.,* 6 F.Supp.2d 1269, 1276 (D.Kan.1998); *see Thomas v. Talbott Recovery Systems, Inc.,* 982 F.Supp. 794, 798 (D.Kan.1997) ("Because plaintiff alleges financial injury in this case, he felt the wrong in Kansas, where he is a resident."). Thus, Kansas law governs the plaintiff's claims for misappropriation under the Kansas Uniform Trade Secrets Act, for common-law unfair competition, and common-law fraud. The parties agree that federal law governs the plaintiff's claims under the Lanham Act and federal patent law. As for the plaintiff's breach of contract claim, the court will reserve its ruling until the matter is more fully briefed and the facts regarding this claim are better presented.

action is commenced.'" *Snyder Industries, Inc. v. Clawson Container Co.,* 991 F.Supp. 1279, 1292–83 (D.Kan.1998) (quoting *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1583 (Fed. Cir.1990), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991)); *see Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1410 (Fed.Cir.1996); *Morrison Co., Inc. v. WCCO Belting, Inc.,* 35 F.Supp.2d 1293, 1296–97 (D.Kan.1999). Having admitted that this court has personal jurisdiction over it, the defendant Sunrise essentially concedes Kansas is a proper venue for the plaintiff's patent claim.

In a civil action where jurisdiction is not founded solely on diversity, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b); *See Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995) ("The Lanham Act has no special venue provision and thus the general venue statute [28 U.S.C. § 1391(b) ] is applicable.") Thus, venue is proper in this district only if a substantial part of the events giving rise to plaintiff's claim occurred in Kansas. "A substantial part of the events" may have occurred in more than one district, and venue may be proper even if contacts with another district were more substantial. *See Andrean v. Secretary of the United States Army,* 840 F.Supp. 1414, 1422–23 (D.Kan.1993); *Merchants Nat. Bank v. SafraBank,* 776 F.Supp. 538, 541 (D.Kan.1991). Put another way, "[t]he statute does not posit a single appropriate district for venue; venue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there." *Woodke v. Dahm,* 70 F.3d at 985 (citation omitted). "[T]he appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred." *First of Michigan Corp. v. Bramlet,* 141 F.3d 260, 264 (6th Cir.1998). "The court must decide whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim." *Andrean,* 840 F.Supp. at 1422. "The forum activities must have been events significant to the plaintiff's claims." *Hudye Soil Services, Inc. v. Tyler,* 46 F.Supp.2d at 1163; *see Hansen–Moor Associates v. Allied B/J Trust,* 1992 WL 190714, at *4 (D.Kan. July 17, 1992).

The court concludes a substantial part of the events giving rise to plaintiff's claims occurred in Kansas. The defendants approached Wempe in Kansas in order to gain access to his proprietary design, including the prototype taken to Texas, which was conceived, developed, and secured in Kansas. *See J & J Mfg., Inc. v. Logan,* 24 F.Supp.2d 692, 702 (E.D.Tex.1998); *Merchants Nat. Bank v. SafraBank (California),* 776 F.Supp. 538, 541 (D.Kan.1991). As discussed under the personal jurisdiction issue, the defendants targeted their misrepresentations at the plaintiff in Kansas. As a result of those misrepresentations, he disclosed his prototype to the defendants and then was mislead into believing that they were not interested in using his design. *See Kelly v. MD Buyline, Inc.,* 2 F.Supp.2d 420, 440 (S.D.N.Y.1998). The plaintiff suffered all of his injuries in Kansas. *See Rothstein v. Carriere,* 41 F.Supp.2d at 387 ("The place where the harm occurred is ... relevant for venue purposes." (citation omitted)); *see Dakota Industries, Inc. v. Dakota Sportswear,* 946 F.2d 1384, 1388–89 (8th Cir.1991); *but see Woodke v. Dahm,* 70 F.3d at 985. As for the Lanham Act claim, "[t]he place where the alleged passing off occurred ... provides an obviously correct venue." *Woodke v. Dahm,* 70 F.3d at 985; *see Cottman Transmission Systems, Inc. v. Martino,* 36 F.3d 291, 294–95 (3rd Cir. 1994). The plaintiff submits an affidavit showing that the Sunrise's product incorporating the plaintiff's design has been sold in Kansas. The court finds that venue is proper in Kansas, even though the defendant's activities in Texas may have been more substantial.

**Issue III: Whether Kansas is a convenient forum or should the case be transferred pursuant to 28 U.S.C. § 1404(a)?**

■ As an alternative to it motions to dismiss for improper venue, the defendant Sunrise moves to transfer this case to Colorado. The governing statute, 28 U.S.C. § 1404(a), provides in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) affords the district court broad discretion to adjudicate motions to transfer based upon a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1516 (10th Cir.1991); *see Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Chrysler Credit Corp.,* at 1515.

"[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992) (quoting *William A. Smith Contracting Co., Inc. v. Travelers Indem. Co.,* 467 F.2d 662, 664 (10th Cir.1972)). The court must consider the following factors in determining whether to transfer a case:

the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.,* 928 F.2d at 1516. To prevail, the defendant must show that the balance of factors weighs heavily in favor of transfer. *Scheidt v. Klein,* 956 F.2d at 965.

■ To support its contention, the defendant Sunrise asserts that most factual witnesses reside either in Colorado or Texas, that the alleged infringing product is manufactured and installed in Colorado and Texas, and that it promptly filed first a declaratory judgment action in the United States District Court for the District of Colorado.[4] In response, the plaintiff points out that his choice of forum should be given considerable weight, since he is a resident of the chosen forum. The plaintiff's counsel avers that the plaintiff would call ten witnesses from Kansas, none of whom are his employees and none of whom would be within the subpoena power of a Colorado court. The plaintiff argues a transfer would simply shift the burden from the defendant to him.

The defendant Sunrise has not established that the present forum is inconvenient and that a transfer is warranted here. The court is unpersuaded by the defendant's conclusory claim that a transfer of venue is warranted in this action. There has been no showing that litigation in Kansas will impose a disproportionate burden on the defendant. In this modem age of technology, many court appearances may take place over the telephone; thus, the burden of litigation imposed upon nonresidents is greatly decreased. The defendant has not come forth with sufficient evidence to establish that the inconvenience of a trial in Kansas outweighs the inconvenience that would be visited on the plaintiff if the case were transferred to Colorado.

---

4. The court recently inquired of the Clerk of the Court in the District of Colorado as to the status of *Sunrise Medical HHG, Inc. v. Patrick Wempe, et al.,* No. 99–307 (D.Colo). The court was surprised to learn that the parties by agreement had dismissed that case without prejudice.

Consequently, because a venue transfer here apparently would succeed only in shifting the inconvenience to plaintiff, the court will not disturb plaintiff's legitimate choice of forum, which is entitled to great weight. *See Heating & Cooling Master Marketers Network, Inc. v. Contractor Success Group, Inc.,* 935 F.Supp. 1167, 1172 (D.Kan.1996); *Pehr v. Sunbeam Plastics Corp.,* 874 F.Supp. 317, 321 (D.Kan.1995). Accordingly, defendants' motion to transfer venue is denied.

**Issue IV: Whether the plaintiff has stated claims upon which relief can be granted against the defendants Alexander and MAD?**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *see Hospice of Metro Denver, Inc. v. Group Health Ins. of Oklahoma,* 944 F.2d 752, 753 (10th Cir.1991) ("Dismissal of a case pursuant to Fed.R.Civ.P. 12(b)(6) requires the legal determination that the plaintiff can prove no set of facts in support of his claim to entitle him to relief."") (citations omitted); *Thatcher Enterprises v. Cache County Corp.,* 902 F.2d 1472 (10th Cir.1990) ("Under Rule 12(b)(6), dismissal is inappropriate unless plaintiff can prove no set of facts in support of his claim to entitle him to relief."). The Tenth Circuit has observed that the federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Maez v. Mountain States Tel. and Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)).

A court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987). It is not the court's function "to weigh potential evidence that the parties might present at trial." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). The court construes the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Hall v. Bellmon,* 935 F.2d 1106, 1109 (10th Cir.1991). These deferential rules, however, do not allow the court to assume that a plaintiff "can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) (footnote omitted). Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1359 (10th Cir.1989).

The defendant Alexander contends that the complaint fails to state any claim against him in his individual capacity as he was acting at all times in his capacity as a corporate officer. Alexander relies on the general rule in Texas that "a corporate officer's acts on the corporation's behalf are deemed corporate acts" for which the defendant officer is not held personally liable unless the plaintiff shows "that the officer acted in a manner so contrary to the corporation's best interests that his or her actions could only have been motivated by personal interest." *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 432 (1997) (citing *Holloway v. Skinner,* 898 S.W.2d 793, 796 (1995)). The plaintiff responds that the self-dealing exception applies here as Alexander acted contrary to MAD's best interests in misappropriating the plaintiff's proprietary design, causing MAD to manufacture it, and then listing

himself as the inventor on the patent application.

 Under either Kansas or Texas law, a director or officer of a corporation may be individually liable for torts that he committed or in which he participated. *Kerns v. G.A.C., Inc.,* 255 Kan. 264, 273, 875 P.2d 949 (1994); *Kollision King, Inc. v. Calderon,* 968 S.W.2d 20, 25 (Tex.App. 1998). The plaintiff's complaint does allege Alexander's commission and/or participation in the different tortious acts. Construing the breach of contract claim in the light most favorable to the plaintiff, Alexander individually agreed that the plaintiff's prototype would be kept in confidence and that he would not use or exploit the plaintiff's proprietary design without a license or assignment. The defendant Alexander is not entitled to Rule 12(b)(6) relief on the basis of this argument.

The defendants Alexander and Map also specifically attack five of the six pleaded claims. They first argue that the plaintiff's Lanham Act claim, 15 U.S.C. § 1125, is founded solely on a false designation of inventorship and is not actionable by reason of the holding in *Pro–Mold and Tool Co., Inc. v. Great Lakes Plastics, Inc.,* 75 F.3d 1568 (Fed.Cir.1996). The plaintiff distinguishes *Pro–Mold* on the facts as not even involving a claim of misappropriation like here but rather was an effort to invalidate a patent on equitable grounds. In reply, the defendants maintain *Pro–Mold* stands as a limitation on Lanham Act claims based on false designations of inventorship because of the availability of other adequate remedies to address this inequitable conduct.

 The defendants overstate the holding in *Pro–Mold* and oversimplify the unique facts addressed there. If the defendants genuinely believe that *Pro–Mold* essentially forecloses all false designation of inventorship claims under the Lanham Act, then they should brief the matter more fully in their summary judgment motions. From what has been argued and presented to court, it seems an implausible stretch to read *Pro–Mold* in this way.

The misappropriation of a proprietary design and a false designation of inventorship in promotional literature appears to be far more than "inequitable conduct in the prosecution of a patent." *See* 75 F.3d at 1574. As pleaded, this claim is not limited to Alexander's actions taken in an effort to obtain a patent. Moreover, the plaintiff's Lanham Act claim appears to be concerned with redressing far more than the patent application or the alleged misrepresentations made there. "[T]here has been no conclusive statement that the Federal Circuit would limit the scope of the Lanham Act such that it could not provide a remedy for misrepresentations to the public as opposed to inequitable conduct before the Patent and Trademark Office." *Spotless Enterprises, Inc. v. Carlisle Plastics, Inc.,* 56 F.Supp.2d 274 (E.D.N.Y. 1999).

The defendants' attacks on the other claims are likewise lacking in merit. The plaintiff's complaint sufficiently alleges that the prototype was a trade secret, in that, it was "confidentially presented" to the defendants. (D.Kan.1, ¶ 13). The complaint alleges an implied agreement that the prototype was being disclosed in confidence and that the defendants would use this proprietary design only after compensating the plaintiff either through a license or assignment. The court is not persuaded that the *Pro–Mold* holding forecloses the plaintiff's common-law claims of unfair competition or fraud. Finally, the plaintiff's allegations of fraud satisfy Rule 9(b).

IT IS THEREFORE ORDERED that the defendant Sunrise's motion (D.Kan.6) to dismiss for improper venue or, in the alternative, to transfer for improper venue, 28 U.S.C. § 1406(a), or, in the alternative, to transfer for convenience of the parties and witnesses, 28 U.S.C. § 1404(a), is denied;

IT IS FURTHER ORDERED that MAD's and Alexander's motion (D.Kan.16)

to dismiss for lack of personal jurisdiction or for failure to state claim is denied.